**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

      v.

BRANDON DINESHU BEGAY, AKA
Brandon Begay, AKA Brandon
Dineshe Begay,
              *Defendant-Appellant.*

No. 09-10249

D.C. No.
3:08-cr-01203-
DGC-1

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

      v.

OZZY CARL WATCHMAN,
              *Defendant-Appellant.*

No. 09-10258

D.C. No.
3:08-CR-01202-
DGC-1

OPINION

Appeal from the United States District Court
for the District of Arizona
David G. Campbell, District Judge, Presiding

Argued and Submitted
June 15, 2010—San Francisco, California

Filed September 20, 2010

Before: Mary M. Schroeder and Jay S. Bybee, Circuit
Judges, and Irma E. Gonzalez, Chief District Judge.*

*The Honorable Irma E. Gonzalez, United States District Judge for the
Southern District of California, sitting by designation.

14423

Opinion by Judge Bybee

## COUNSEL

Milagros A. Cisneros, Assistant Federal Public Defender, Phoenix Arizona, for the defendants-appellants.

Joan G. Ruffennach, Assistant U.S. Attorney, Phoenix, Arizona, for the plaintiff-appellee.

## OPINION

BYBEE, Circuit Judge:

Defendants-Appellants Brandon Dineshu Begay and Ozzy Carl Watchman (collectively, "Defendants"[1]) are convicted sex offenders. They initially registered as sex offenders with the State of Arizona pursuant to the Sex Offender Registration and Notification Act ("SORNA"), but did not update their registration information when they moved to a different Arizona address within the territory of the Navajo Nation, a federally recognized Indian tribe. Defendants were indicted for failing to update their registration, in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913, and they moved to dismiss their indictments. The district court denied their motions, and Defendants now appeal that decision.

---

[1]We resolve these cases in a single opinion because they raise the same legal issues and involve virtually identical fact patterns, district court opinions, and briefs.

Defendants argue that SORNA did not require them to update their registration with the State of Arizona while they were residing in the Navajo Nation, and that they could not update their registration with the Navajo Nation because it had not yet established a sex offender registry. Based on these premises, they invoke SORNA's affirmative defense, which applies when "uncontrollable circumstances prevent[ ] the individual from complying" with SORNA. 18 U.S.C. § 2250(b)(1). Alternatively, they argue that if SORNA did require them to update their registration with Arizona, SORNA violates the Due Process Clause of the Fifth Amendment and the Ex Post Facto Clause.

We hold that SORNA required Defendants to update their registration with Arizona, and because nothing prevented them from doing so, no "uncontrollable circumstances prevented [them] from complying" with SORNA. Moreover, we hold that this application of SORNA violates neither the Due Process Clause nor the Ex Post Facto Clause. Thus, we affirm the district court's denial of Defendants' motions to dismiss their indictments.

I

We begin with the relevant background information: SORNA's history and framework, the Navajo Nation's experience with SORNA, and the facts and proceedings in each of the Defendants' cases.

A

In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program ("Wetterling Act"). 42 U.S.C. §§ 14071-73. Under the Wetterling Act, states were given three years to establish a sex offender registration program in compliance with the Act or forfeit 10 percent of federal funding for a state and local law enforcement assistance program. *Id.* § 14071(g).

The Wetterling Act required convicted sex offenders to register their addresses with states, which would then relay this information to the FBI, establishing a national database of sex offender data. *See id.* § 14071(b)(2). The Wetterling Act also required states, pursuant to a 1996 amendment known as "Megan's Law," to "release relevant information that is necessary to protect the public concerning a specific person required to register under this section, . . . includ[ing] maintenance of an Internet site containing such information that is available to the public." *Id.* § 14071(e)(2). As a result of the Wetterling Act, by 2000, all fifty states and the District of Columbia had both sex offender registration systems and community notification programs. However, "Congress neglected to address Indian tribes in any way in the Jacob Wetterling Act or Megan's Law." Virginia Davis & Kevin Washburn, *Sex Offender Registration in Indian Country*, 6 OHIO ST. J. CRIM. L. 3, 8 (2008).

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act of 2006 ("Adam Walsh Act"). Pub. L. No. 109-248, §§ 1-155, 120 Stat. 587, 590-611 (2006). Title I of the Adam Walsh Act established SORNA, the declared purpose of which was "to protect the public from sex offenders and offenders against children . . . [by] establish[ing] a comprehensive national system for the registration of those offenders." 42 U.S.C. § 16901. SORNA was enacted to succeed and enhance the registration requirements of the Wetterling Act by expanding the offenses for which registration is required, requiring more information from registrants, increasing the frequency and duration of reporting, and imposing stricter penalties for failure to report. *See id.* § 16911 *et seq.*

The basic requirement under SORNA is that "[a] sex offender[²] shall register, and keep the registration current, in each

---

[2] "Sex offender" is defined as "an individual who was convicted of a sex offense." *Id.* § 16911(1). SORNA expanded the range of crimes covered by that term and established three "tiers" of sex offenders based on the seriousness of the sex offense of which they were convicted. *See id.* § 16911(2)-(8).

jurisdiction where the offender resides,[3] where the offender is an employee, and where the offender is a student." *Id.* § 16913(a). SORNA further specifies the process by which a sex offender must "[k]eep[ ] the registration current":

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to [§ 16913(a)] and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry. That jurisdiction shall immediately provide that information to all other jurisdictions in which the offender is required to register.

*Id.* § 16913(c).

SORNA imposes criminal penalties on sex offenders who fail to abide by its requirements, providing that "[w]hoever . . . knowingly fails to register or update a registration as required by [SORNA] shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C. § 2250(a)(3). However, SORNA provides an affirmative defense for failure to register if "(1) uncontrollable circumstances prevented the individual from complying; (2) the individual did not contribute to the creation of such circumstances in reckless disregard of the requirement to comply; and (3) the individual complied as soon as such circumstances ceased to exist." *Id.* § 2250(b).

SORNA also expanded the jurisdictions included in the registration program, defining "jurisdiction" under § 16913(a) to include all fifty states, the District of Columbia, Puerto Rico, Guam, American Samoa, the Northern Mariana Islands,

---

[3]"Resides" is defined, "with respect to an individual, [as] the location of the individual's home or other place where the individual habitually lives." *Id.* § 16911(13).

the Virgin Islands, and, "[t]o the extent provided and subject to the requirements of section [16927] of this title, a federally recognized Indian tribe." 42 U.S.C. § 16911(10). Section 16927 of Title 42, in turn, permits federally recognized Indian tribes to either "(A) elect to carry out [SORNA] as a jurisdiction subject to its provisions; or (B) elect to delegate its functions under [SORNA] to another jurisdiction or jurisdictions within which the territory of the tribe is located." *Id.* § 16927(a)(1).

Jurisdictions covered under SORNA were given three years —until July 27, 2009—to comply with its requirements, *id.* § 16924(a)(1), or face a reduction of federal funding, *id.* § 16925(a)(4). However, the statute gave the Attorney General the authority to "authorize up to two 1-year extensions of th[is] deadline." *Id.* § 16924(b). On May 26, 2009, the Attorney General authorized a one-year extension of the deadline for jurisdictions to implement SORNA, until July 27, 2010. *See* Att'y Gen. Order No. 3081-2009 (May 26, 2009).

Unlike the state's obligation to implement SORNA, SORNA's registration requirements applied immediately and retroactively to all sex offenders regardless of when they were convicted. *See* 72 Fed. Reg. 8894, 8895 (Feb. 28, 2007) ("In contrast to SORNA's provision of a three-year grace period for jurisdictions to implement its requirements, SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to *all offenders* in the categories for which SORNA requires registration." (emphasis added)); *id.* at 8896 ("SORNA requires all sex offenders who were convicted of sex offenses in its registration categories to register in relevant jurisdictions, with no exception for sex offenders whose convictions predate the enactment of SORNA."). Thus, a sex offender's obligations to register and update his registration under SORNA are generally independent of a jurisdiction's implementation of SORNA's requirements. *See United States*

*v. George*, 579 F.3d 962, 965 (9th Cir. 2009) ("While states have until July 2009 to implement the administrative components of [SORNA], the statute became effective July 27, 2006, and registration under it became a requirement of federal law at that time."); *United States v. Brown*, 586 F.3d 1342, 1348, 1349 (11th Cir. 2009) (noting "the distinction between a jurisdiction's duty to implement SORNA"—on which that jurisdiction's federal funding is conditioned—"and a sex offender's duty to register," and "agree[ing] with [its] sister circuits that a sex offender is not exempt from SORNA's registration requirements merely because the jurisdiction in which he is required to register has not yet implemented SORNA").

B

In proceedings before the district court, Defendants submitted an affidavit prepared by Kathleen Bowman, the Public Defender for the Navajo Nation. This declaration states that, before the enactment of the Adam Walsh Act, the Navajo Nation Council ("Council") passed a resolution enacting the Navajo Nation Sex Offenders Registration Act of 2005, which does not comply with SORNA's requirements. Following the enactment of Adam Walsh Act, on July 19, 2007, the Council passed a resolution electing to implement the requirements of the Adam Walsh Act within the period of implementation by local jurisdictions, pursuant to 42 U.S.C. § 16927(a)(1)(A).[4] The Navajo Nation has created a task force to implement a sex offender registry in compliance with the requirements of

---

[4]This resolution stated:

The Navajo Nation hereby expressly reaffirms its intent to fully implement all of the applicable requirements of the Adam Walsh Act and wholly rejects the idea that any state may be authorized, without proper consultation, and contrary to the Navajo Nation government-to-government relationship with the United States Government, to exercise this type of jurisdiction within the Navajo Nation.

the Adam Walsh Act. However, as of the time this appeal was briefed, the Navajo Nation has not yet created a sex offender registry.

C

1

On June 5, 2006, Defendant-Appellant Brandon Dineshu Begay pleaded guilty in the District of Arizona to sexual abuse of a minor, in violation of 18 U.S.C. § 2243(a), a Tier II offense under SORNA. He was sentenced to twenty-four months' imprisonment and three years' supervised release.

As a term of his plea and supervised release, Begay was required to register as a sex offender with all state and tribal sex offender agencies in any state where he resided, was employed, carried on a vocation, or was a student, as directed by the probation officer. He was further required to notify his probation officer within seventy-two hours of changing his residence and to update his sex offender registration with his new address within the same time frame. *See* ARIZ. REV. STAT. §§ 13-3821, 13-3822.

Begay initially registered with the State of Arizona as required on December 10, 2007. On July 9, 2008, Begay updated his registration, listing his new address as 2445 N. Oracle Road, Tucson, Arizona. This was the address of a residential treatment center named "New Beginnings," where Begay was required to reside as part of his supervised release. On July 13, 2008, Begay left New Beginnings without permission. On July 31, 2008, he was arrested at his grandmother's house in Tuba City, Arizona, which is within the confines of the Navajo Reservation. Begay did not register his change of address after he left New Beginnings, so his most recent registration is the New Beginnings address.

Begay was indicted on a single count of failure to update his registration as a convicted sex offender, in violation of 18

U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913. He subsequently filed a motion to dismiss the indictment on ten separate grounds, three of which are relevant to this appeal. The district court heard oral argument on the motion, and denied it in a written order on February 24, 2009.

Begay entered a conditional plea of guilty to the indictment, expressly reserving the right to appeal the district court's denial of his motion to dismiss. The district court sentenced Begay to twenty-four months' imprisonment, followed by five years' supervised release. Begay timely appealed.

2

On July 21, 2006, Defendant-Appellant Ozzy Carl Watchman pleaded guilty in the District of Arizona to sexual abuse of a minor, in violation of 18 U.S.C. § 2243(a). He was sentenced to eighteen months' imprisonment followed by three years' supervised release. As a term of his plea and supervised release, he was required to register as a sex offender and update his registration pursuant to the same requirements as Begay.

On November 28, 2006, Watchman registered with the State of Arizona. He updated his registration with the New Beginnings address on January 24, 2008. On June 25, 2008, Watchman left New Beginnings without permission. He was arrested on August 14, 2008, in Fort Defiance, Arizona, within the Navajo Nation, where he had been living with his mother since leaving New Beginnings. Watchman did not register his change of address after he left New Beginnings, so the New Beginnings address is his most recent registration.

Watchman was indicted on a single count of failure to update his registration as a convicted sex offender, in violation of 18 U.S.C. § 2250(a) and 42 U.S.C. §§ 16911 and 16913. He subsequently filed a motion to dismiss the indictment on the same ten grounds as Begay. The district court

denied this motion in a nearly identical written order issued on the same day.

After Watchman entered a conditional plea of guilty in which he reserved the right to appeal the district court's decision, the district court sentenced Watchman to fifteen months' imprisonment, followed by five years' supervised release. Watchman timely appealed.

## II

Defendants argue that the district court erred in denying their motions to dismiss their indictments. They make three arguments on appeal, one regarding the proper construction of SORNA and two regarding its constitutionality. We review issues pertaining to statutory interpretation and constitutional law de novo. *See United States v. Norbury*, 492 F.3d 1012, 1014 (9th Cir. 2007); *United States v. Bynum*, 327 F.3d 986, 990 (9th Cir. 2003).

## A

The Defendants' statutory argument is based on two premises. First, they argue that SORNA did not require them to update their registration with the State of Arizona while they were residing in the Navajo Nation. They reason that, because the Navajo Nation had elected to become a SORNA jurisdiction, the relevant "jurisdiction" with which they were required to register while residing within the Navajo Nation was only the tribe itself, not the state within which the tribe is located. Second, they correctly point out that they could not update their registration with the Navajo Nation because it had not yet established a sex offender registry. Based on these two premises, they conclude that "uncontrollable circumstances prevented [them] from complying" with SORNA. 18 U.S.C. § 2250(b)(1).

Our reading of SORNA leads us to disagree with the Defendants' first premise and therefore their conclusion.

Because Defendants were required to update their registration with Arizona even while living in the Navajo Nation, no "uncontrollable circumstances" prevented their compliance with SORNA.

1

**[1]** SORNA provides: "A sex offender shall register, and keep the registration current, in *each jurisdiction* where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a) (emphasis added). There are two separate obligations — an obligation to register and an obligation to keep the registration current. In both cases, the sex offender must register in each jurisdiction in which he resides, works, or attends school. However, SORNA provides some flexibility to the sex offender who must keep his registration current. "[A]fter each change of name, residence, employment, or student status," the sex offender must keep his registration current by "appear[ing] in person in at least 1 jurisdiction" and "inform[ing] that jurisdiction of all changes." In turn, that jurisdiction will provide the updated "information to all other jurisdictions in which the offender is required to register." 42 U.S.C. § 16913(c).

At the time of their arrest, Defendants had previously registered as sex offenders in the State of Arizona, but "resided" in both the Navajo Nation and the State of Arizona, both of which qualify as "jurisdictions" under SORNA. *See id.* § 16911(10)(A), (H) (defining "jurisdiction" to include "[a] State" and "a federally recognized Indian tribe" that has elected to become a SORNA jurisdiction pursuant to § 16927); *id.* § 16911(13) (defining "resides" as "the location of the individual's home or other place where the individual habitually lives"). Thus, Defendants had an obligation under SORNA to "keep the registration current" in Arizona. *Id.* § 16913(a). Because the Navajo Nation did not have a registry at the time of the Defendants' arrests, and the Defendants had

not registered with the Navajo Nation, the Defendants were required to fulfill their obligation to "keep the registration current[ ] in each jurisdiction where" they were residing, *id.*, by appearing in person in Arizona and updating their registration there, *see id.* § 16913(c). By doing so, they would have "appear[ed] in person in at least 1 jurisdiction involved pursuant to [§ 16913(a)]." *Id.* And because nothing prevented the Defendants from updating their registration with Arizona, no "uncontrollable circumstances" prevented them from complying with SORNA. 18 U.S.C. § 2250(b)(1).

**[2]** We acknowledge that there is another plausible reading of the term "each jurisdiction." Defendants argue that this term "means simply three possibilities: the SORNA jurisdiction where one lives, the SORNA jurisdiction where one works, and the SORNA jurisdiction where one goes to school." They assert that "the word 'each' is important because the offender could *reside* in one jurisdiction, *work* in a second jurisdiction, and *attend school* in a third jurisdiction. In such a case, the word 'each' indicates that he is expected to register in all three jurisdictions." On the other hand, they argue, "SORNA does not require sex offenders who live in a tribal SORNA jurisdiction to also register in another, standalone SORNA jurisdiction." In other words, Defendants believe that the term "each jurisdiction" means that sex offenders are required to register in a maximum of three jurisdictions: a jurisdiction of residence, a jurisdiction of employment, and a jurisdiction of schooling.

**[3]** Although this interpretation is not unreasonable, we do not consider it to be the best reading of SORNA. Rather than reading "each jurisdiction" as a cap on registration, we think it makes more sense to read it as expanding the obligation to register. Thus, SORNA should be read to mean that a sex offender "shall register, and keep the register current, in each jurisdiction where the offender resides, [in each jurisdiction] where the offender is an employer, and [in each jurisdiction] where the offender is a student." 42 U.S.C. § 16913(a). Our

reading is consistent with the purposes of SORNA. SORNA was "an effort to make the[ ] state [registration and notification] schemes more comprehensive, uniform, and effective." *Carr v. United States*, 130 S. Ct. 2229, 2232 (2010). The declared purpose of SORNA is to create "a *comprehensive* national system for the registration of [sex] offenders." 42 U.S.C. § 16901 (emphasis added). By "comprehensive," Congress meant a system that would track all sex offenders in all parts of the United States and would prevent even the temporary loss of sex offenders from the registration roles, in contrast with the "patchwork of individual systems administered and maintained by each State," which often allowed sex offenders to "slip through the cracks." 152 Cong. Rec. H5730 (July 25, 2006) (statement of Rep. Van Hollen). A report by the House Committee on the Judiciary emphasizes "the transient nature of sex offenders and the inability of the States to track those offenders." H.R. Rep. No. 109-218, pt. 1, at 30 (2005). It further states that "[t]he most significant enforcement issue in the sex offender program is that over 100,000 sex offenders, or nearly one-fifth in the Nation are 'missing,' " which "typically occurs when the sex offender moves from one State to another." *Id.* at 32. The report predicts that, under SORNA, "[t]he combination of incentives for the sex offender to comply . . . w[ould] reduce the overwhelming number of non-complying or 'lost' sex offenders in our communities." *Id.*; *see also* 152 Cong. Rec. S8014 (2006) (statement of Sen. Biden) ("[T]here are over 550,000 offenders nationwide, and more than 20 percent of them are unaccounted for."); 152 Cong. Rec. H5722-30 (2006) (statement of Sen. Sensenbrenner) ("There are over a half million sex offenders in the United States and up to 100,000 offenders are unregistered and their locations unknown to the public and law enforcement. [SORNA] contains strict national offender registration and data sharing requirements to ensure that law enforcement agencies and America's communities know where sex offenders live and work.").

[4] We have given the term "each jurisdiction" the reading that best ensures that sex offenders do not go "missing" from

the registration rolls. Reading SORNA as Defendants read it would mean that sex offenders who move to tribal lands that have elected to implement SORNA but has not yet created a registry would have no obligation to update their registration, allowing them to "slip through the cracks." Indeed, Defendants read the word "each" in the statute to require registration with only, at a maximum, one jurisdiction of residence, one jurisdiction of employment, and one jurisdiction of schooling. Under this reading, a sex offender who is employed in two states would be required to register in only one state, even if the vast majority of his time was spent in the other state. This could not have been what Congress intended. Rather, the most reasonable reading of the word "each" is that a sex offender must register with, and keep his registration current with, *every* jurisdiction in which he resides, works, or goes to school.

2

Defendants have four responses to our reading of the text and legislative intent of SORNA.

a

Defendants argue that our reading conflicts with *Carr*. In *Carr*, the Supreme Court held that 18 U.S.C. § 2250(a), which establishes a criminal offense for any person required to register under SORNA who "travels in interstate or foreign commerce" and "knowingly fails to register or update a registration," does not apply to sex offenders whose interstate travel occurred prior to SORNA's effective date. 130 S. Ct. at 2232-33. The government justified its contrary reading of SORNA by "invok[ing] one of SORNA's underlying purposes: to locate sex offenders who had failed to abide by their registration obligations" and to address the problem of " 'missing' sex offenders." *Id.* at 2240. The Court rejected this argument, stressing that SORNA must be given the interpretation that best "accords with the statutory text," *id.* at

2235, rather than giving the statute a "strained reading," *id.* at 2238, based simply on the notion that it better accorded with "a general goal of SORNA," *id.* at 2240.

Defendants argue that, similarly, "this Court may not strain the statute's language to fit the government's notion of what would allegedly best serve the statute's broad purpose of accounting for 'missing sex offenders.' " We reject Defendants' argument for two main reasons.

**[5]** First, we believe that our interpretation of SORNA is not a "strained reading" but rather the best reading of the statute's text. In requiring sex offenders to "keep the registration current[ ] in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student," 42 U.S.C. § 16913(a), SORNA clearly contemplates that certain sex offenders might have to register and keep their registration current in multiple jurisdictions. And nothing in the text of the statute limits its application to only one jurisdiction in each of the three categories mentioned in § 16913(a); rather, the most logical reading of the statute is that it applies to *every* jurisdiction falling within one of the three categories.

Second, there is nothing novel about reading a statute in light of its legislative purpose; indeed, we have stated that "[t]he language of a statute *must* be interpreted in its context to effectuate legislative intent." *Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1200 (9th Cir. 2003) (emphasis added). What *Carr* found to be problematic in the government's reasoning was the government's "confus[ion of] a general goal of SORNA with the *specific purpose of § 2250.*" 130 S. Ct. at 2240 (emphasis added). The Court specifically pointed to the provisions in 42 U.S.C. § 16901 *et seq.*, including § 16913(a), as "stand[ing] at the center of Congress' effort to account for missing sex offenders," whereas § 2250 was based on different policy choices. *Id.* at 2241 ("By facilitating the collection of sex-offender information and its dissemination among

jurisdictions, these provisions, [including § 16913(a),] not § 2250, stand at the center of Congress' effort to account for missing sex offenders."). Thus, this case, unlike *Carr*, requires us to construe a provision central to Congress's legislative purpose in enacting SORNA, and so we must take this purpose into account in resolving whatever ambiguity exists in the term "each jurisdiction."

b

Defendants also argue that interpreting SORNA to require them to update their registration with Arizona conflicts with Congress's intent to give Indian tribes that elect to implement SORNA "a stature equal to states" as "separate jurisdictions" under SORNA, contrary to the scheme under the Wetterling Act. They contend that our interpretation "divest[s] the Navajo Nation of its SORNA responsibilities," and that none "of the detailed provisions allowing for tribes to become SORNA jurisdictions . . . would have been necessary if Congress intended for tribes and states to have concurrent SORNA jurisdiction over tribal territories."

We disagree. We have not determined today that the Navajo Nation is not a separate SORNA jurisdiction. Rather, we have concluded, based on SORNA's text, that *both* the Navajo Nation and the State of Arizona are SORNA jurisdictions. And we have determined that, until the Navajo Nation establishes a registry, and the Defendants register there, Defendants and other sex offenders living within the Navajo Nation's confines must fulfill their obligation to keep their registration current in "each jurisdiction" in which they reside by updating their registration with Arizona, thus preventing them from "slipping through the cracks" by absconding to a tribal jurisdiction that has not yet implemented a registry.

**[6]** As we have discussed, once the Navajo Nation *does* implement a registry, sex offenders living within its confines will be able to fulfill their obligation to "keep the registration

current[ ] in each jurisdiction where [they] reside[ ]," 42 U.S.C. § 16913(a), by updating their information with the Navajo Nation's registry, *see id.* § 16913(c) (in order to "[k]eep[ ] the registration current," "[a] sex offender shall . . . appear in person in *at least 1* jurisdiction involved pursuant to subsection (a) of this section" (emphasis added)). In other words, once the Navajo Nation fully implements SORNA, it becomes a jurisdiction equal in stature to the State of Arizona as the monitor of sex offenders within its boundaries, precisely as Congress intended.[5]

c

Third, Defendants argue that our interpretation leads to absurd and unfair results. Defendants point out that if Puerto Rico, which is a SORNA jurisdiction, "had no sex offender registry, a sex offender who lived, worked and went to school in Puerto Rico . . . would have *no obligation* to register in any other SORNA jurisdiction." Defendants argue:

> The fact that an island territory is physically removed from other SORNA jurisdictions should not mean that SORNA imposes fewer registration obligations on the sex offenders who live, work, or go to school on that island territory than it does on the sex offenders who live, work, or go to school in any other SORNA jurisdiction. . . . Yet, the district court's interpretation would impose a greater burden on the sex offender living on the Navajo Reservation than on the sex offender living in Puerto Rico. This is unfair, unwarranted, and illustrates the absurdity of the district court's interpretation.

---

[5]For the same reasons, we disagree with Defendants' argument that the district court's decision "offends the notion of tribal sovereignty" by compromising "the traditional right of the Navajo Nation to police its own members." Requiring Defendants to update their registration with Arizona simply supplements registration with the Navajo Nation until the tribe actually establishes a registry.

"It is true that interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available." *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982). However, we believe that the differential treatment identified by the Defendants is far from an "absurd result." Again, the legislative purpose of SORNA was to track the location of sex offenders in all jurisdictions in which they live, work, and go to school. An interpretation of SORNA requiring the updating of registration with the state in which an Indian tribe is located if the Indian tribe has not yet established a registry is most "consistent with th[at] legislative purpose." *Id.* The most that can be said about Defendants' comparison to Puerto Rico is that SORNA's failure to cover jurisdictions that are physically removed from states and that have not established a registry is a gap in SORNA that makes the statute somewhat less effective than it could have been in carrying out Congress's intent. The fact that Puerto Rico might, theoretically, present a gap in coverage does not render our interpretation unfair[6] or absurd.[7]

---

[6]It is also worth noting that, as the district court pointed out, Defendants "certainly understood [their] obligation to register with Arizona," given that they had both registered with Arizona previously and had updated their registration when they moved to New Beginnings.

[7]We admit that our reading of SORNA produces a bit of an oddity. A sex offender living, working, or going to school on an Indian reservation that has established a registry may fulfill his obligation to "[k]eep[ ] the registration current" simply by appearing in person at the Indian tribe's registry to update his registration. 42 U.S.C. § 16913(c). However, under our reading of the term "each jurisdiction," a sex offender living, working, or going to school within an Indian reservation at the time of his *initial* registration must initially register in both the Indian tribe and the state within which the Indian tribe is located if both jurisdictions have their own registry. *See id.* § 16913(a) ("A sex offender shall register . . . in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student."). Because the area within an Indian reservation is the only area that can simultaneously fall within two SORNA jurisdictions—the Indian tribal area and the state—an Indian reservation is the only place in which a person must initially register in two jurisdictions for a single place of residence, work, or schooling. This is a consequence of the tribes having sovereign status, yet residing entirely within a state or states.

d

**[7]** The Defendants' final statutory argument is that, "[e]ven if the Court . . . finds the term ['each jurisdiction'] ambiguous, the rule of lenity requires that the term 'each jurisdiction' be given the more lenient construction." However, the Supreme Court has held that "[t]he simple existence of some statutory ambiguity . . . is not sufficient to warrant application of [the rule of lenity]." *Muscarello v. United States*, 524 U.S. 125, 138 (1998). Rather, "[t]o invoke the rule, we must conclude that there is a *grievous* ambiguity or uncertainty in the statute," to the point that, "after seizing everything from which aid can be derived, . . . we can make *no more than a guess* as to what Congress intended." *Id.* at 138-39 (emphases added) (quotation marks omitted) (ellipsis in original). In light of the most natural interpretation of the term "each jurisdiction" and the legislative intent of the statute, we believe that SORNA does not suffer from "grievous ambiguity."

* * * * *

**[8]** In sum, Defendants were required to comply with SORNA by reporting their change of address to Arizona. And because nothing prevented them from doing so, no "uncontrollable circumstances" prevented their compliance with SORNA.

B

Alternatively, Defendants argue that if SORNA required them to update their registration with Arizona while they were residing on the Navajo Reservation, SORNA is unconstitutional under the Due Process Clause of the Fifth Amendment and the Ex Post Facto Clause. We address each of these clauses in turn.[8]

---

[8]Our discussion of these constitutional arguments also implicitly addresses Defendants' contention that we should construe SORNA in such

1

The Fifth Amendment's Due Process Clause guarantees that persons shall not "be deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Defendants argue that, "[b]ecause no mechanism yet exists for [Defendants] to comply with SORNA, it [wa]s impossible for [them] to be in compliance with the statute," and that "[c]riminalizing the failure to do something that is impossible to do violates the Due Process Clause guarantee of fundamental fairness."

**[9]** Defendants' argument with respect to the Due Process Clause is essentially a restatement of their argument that "uncontrollable circumstances" prevented them from complying with SORNA. As discussed above, SORNA obligated Defendants to register with Arizona and it was possible for them to do so. Thus, there was no violation of Defendants' due process rights. *Cf. Brown*, 586 F.3d at 1349-50 (rejecting the defendant's due process argument "that it was impossible for him to comply with SORNA because Alabama had not implemented it," and reasoning that "SORNA applied to [defendant], and he could have registered through Alabama's sex offender registry").

2

Article 1, Section 9 of the Constitution provides that "[n]o . . . ex post facto Law shall be passed." Defendants argue that the punishment of Defendants "for failing to update their reg-

---

a way as to avoid addressing serious constitutional issues pertaining to the Due Process Clause and the Ex Post Facto Clause. *See United States v. La Franca*, 282 U.S. 568, 574 (1931) ("A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional, but also grave doubts upon that score." (quotation marks omitted)). Because we do not believe that SORNA raises "grave doubts" about its constitutionality, the constitutional avoidance canon is not implicated.

istration when [they could not] do so because the Navajo Nation has not implemented SORNA or any other sex offender registration scheme" violates the Ex Post Facto Clause.

**[10]** But the Ex Post Facto Clause "forbids the Congress and the States to enact any law which imposes a punishment for an act *which was not punishable at the time it was committed*; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981) (emphasis added) (internal quotation marks and citations omitted); *see also Miller v. Florida*, 482 U.S. 423, 430 (1987) ("[T]o fall within the *ex post facto* prohibition, . . . the law must be retrospective, that is, it must apply to events *occurring before its enactment* (second italics added) (internal quotation marks omitted)). In this case, Defendants failed to update their registration in 2008, well after SORNA was enacted in 2006, and well after the Attorney General clarified, in 2007, that SORNA's obligations for sex offenders applied immediately regardless of a state's implementation of SORNA's requirements. *See* 72 Fed. Reg. at 8896. Under SORNA, as discussed above, Defendants had an obligation to update their registration with Arizona upon changing addresses in 2008. Thus, the Defendants were punished for conduct that was "punishable at the time it was committed," and there is no Ex Post Facto problem. *Weaver*, 450 U.S. at 28; *cf. also George*, 579 F.3d at 968-69 (rejecting the defendant's Ex Post Facto challenge because he "violated SORNA after it was enacted, and after any question of its application to him had been removed by the Attorney's General's ruling").

## III

We hold that SORNA required Defendants to update their registration with the State of Arizona, and that this application of SORNA violates neither the Due Process Clause of the Fifth Amendment nor the Ex Post Facto Clause. Thus, we

affirm the district court's denial of Defendants' motions to dismiss their indictments.

AFFIRMED.