**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

KEVIN LEROY CROWDER,
        *Defendant-Appellant.*

No. 10-30125

D.C. No.
2:09-cr-00025-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Submitted May 6, 2011*
Portland, Oregon

Filed August 30, 2011

Before: A. Wallace Tashima, Carlos T. Bea, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Ikuta

---

*The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Michael Donahoe, Federal Defenders of Montana, Helena, Montana, for defendant-appellant Kevin Leroy Crowder.

Marcia Hurd, Assistant United States Attorney, Billings, Montana, for plaintiff-appellee United States.

**OPINION**

IKUTA, Circuit Judge:

The Sex Offender Registration and Notification Act (SORNA) imposes criminal penalties on any person who "knowingly fails to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250(a). This appeal requires us to decide whether the government must prove that a defendant knew that SORNA imposed a registration requirement in order to convict a defendant of a violation of this statute. We join our sister circuits in holding that the government need not prove this knowledge element and affirm the district court.

I

In June 2007, Kevin Leroy Crowder was convicted of child molestation in Washington state court and sentenced to two years confinement, followed by three to four years community custody (i.e., probation). On June 22, 2007, he received and signed a certified copy of his judgment and sentence form, which informed him that as a sex offender, he was "required to register with the sheriff of the county of the state of Washington" where he resides, and that if he moved "out of Washington State," he had to "send written notice within 10 days of moving to the county sheriff with whom [he] last registered in Washington State," and then "register a new address, fingerprints, and photograph with the new state within 10 days." Upon his release from prison, on May 28, 2008, Crowder completed a Washington state sexual offender registration form, registering at the King County Sheriff's Office. The registration form stated that if Crowder "move[d]

out of Washington State," he had to "send signed written notice within ten days of moving to the new state or foreign country, to the county sheriff with whom [he] last registered." And if he "knowingly fail[ed] to comply with these registration requirements, [he would be] guilty of a . . . felony." One week later, he filed a change of address form.

In March or April 2009, Crowder left Washington for Montana without advising either state to that effect. After a short stay with a woman he met at a bus stop, Crowder set up a campsite in a national forest. He was arrested on September 29, 2009, at a convenience store in Bozeman. In October 2009, a federal grand jury indicted Crowder for failure to register as a sex offender, in violation of 18 U.S.C. § 2250(a). The indictment stated: "KEVIN LEROY CROWDER, a sex offender by reason of a conviction under Washington law for Child Molestation in the Second Degree, a Felony, and a person required to register under [SORNA], traveled in interstate commerce to Montana, and did knowingly fail to register and/or update a registration, in violation of 18 U.S.C. § 2250(a)." He entered a not guilty plea and opted for a bench trial. The district court rejected Crowder's argument that he did not receive "actual notice" of the federal sex registration requirements, relying on the Eighth Circuit's decision in *United States v. Baccam*, 562 F.3d 1197 (8th Cir.), *cert. denied*, 130 S. Ct. 432 (2009), and found him guilty. Crowder timely appeals. We have jurisdiction under 28 U.S.C. § 1291.

II

A

Before SORNA was enacted, the Wetterling Act, 42 U.S.C. §§ 14071-73, *repealed by* SORNA, Pub. L. 109-248 (2006), required states to establish a sex offender registration program that met federal requirements or lose 10 percent of federal funding for law enforcement programs. *Id.* § 14071(g). "[B]y 2000, all fifty states and the District of Columbia had both sex

offender registration systems and community notification programs." *United States v. Begay*, 622 F.3d 1187, 1190 (9th Cir. 2010).

On July 27, 2006, Congress enacted the Adam Walsh Child Protection and Safety Act, 42 U.S.C. §§ 16901 *et seq.*, which includes SORNA. "SORNA was enacted to succeed and enhance the registration requirements of the Wetterling Act . . . ." *Begay*, 622 F.3d at 1190. To "protect the public from sex offenders . . . and in response to the vicious attacks by violent predators" against seventeen named victims of sex crimes, SORNA "establishe[d] a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901. A "sex offender" is an individual "who was convicted of a sex offense," *id.* § 16911(1), that is, "a criminal offense that has an element involving a sexual act or sexual contact with another," *id.* § 16911(5)(A)(i). A sex offender must "register, and keep the registration current, in each jurisdiction where the offender resides," *id.* § 16913(a), before completion of his prison term, or, if he was not confined, no more than three business days after sentencing, *id.* § 16913(b). "[R]egister" is undefined, but SORNA defines a "sex offender registry" as a "registry of sex offenders, and a notification program, maintained by a jurisdiction." 42 U.S.C. § 16911(9). In addition, an offender must, "after each change of name, residence, employment, or student status," appear in person in one of the jurisdictions in which he is required to register and notify it of the changed information. *Id.* § 16913(c). In other words, SORNA requires a person convicted of a crime that "has an element involving a sexual act or sexual contact with another," *id.* § 16911(5)(A)(i), to register in the registry of sex offenders maintained by the jurisdiction in which the offender resides.

Separate from the requirements imposed on sex offenders, SORNA also imposes certain obligations on the government. First, § 16917(a) directs an "appropriate official" (the term is undefined) to,

shortly before release of the sex offender from cus-
tody, or, if the sex offender is not in custody, imme-
diately after the sentencing of the sex offender, . . .

> (1) inform the sex offender of the duties of
> a sex offender under this subchapter and
> explain those duties;
>
> (2) require the sex offender to read and sign
> a form stating that the duty to register has
> been explained and that the sex offender
> understands the registration requirement;
> and
>
> (3) ensure that the sex offender is regis-
> tered.

*Id.* § 16917(a). Section 16917(b) provides that the Attorney
General "shall prescribe rules for the notification of sex
offenders who cannot be registered in accordance with" the
procedure described in § 16917(a). The Attorney General has
not yet promulgated such rules. In addition, Section 16913
gives the Attorney General "the authority to specify the appli-
cability of [these] requirements . . . to sex offenders convicted
before the enactment of this chapter or its implementation in
a particular jurisdiction, and to prescribe rules for the registra-
tion of any such sex offenders and for other categories of sex
offenders who are unable to comply with subsection (b)."
§ 16913(d).[1]

Finally, SORNA contains various criminal provisions. Rel-
evant here, 18 U.S.C. § 2250 provides that anyone "required
to register under [SORNA]" who was either convicted of a
federal sex offense or who "travels in interstate or foreign
commerce," and "knowingly fails to register or update a regis-

---

[1]Because SORNA was enacted in 2006, and Crowder was convicted of
child molestation in 2007, this provision is not applicable to him.

tration as required by [SORNA]," shall be fined or imprisoned or both.[2] 18 U.S.C. § 2250(a).

## B

[1] Crowder does not dispute that he is a "sex offender" who traveled in interstate commerce from Washington to Montana and failed to register in Montana or update his registration in Washington, despite being required to do so by his judgment of conviction. Nevertheless, Crowder argues that he cannot be convicted under § 2250 because the government failed to plead and prove beyond a reasonable doubt that he knew registration was required by SORNA. In other words, he urges us to read the language of § 2250(a)(3) (that the defendant "knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act") as requiring the government to plead and prove that the

---

[2]18 U.S.C. § 2250(a) states in full:

  (a) In general.—Whoever—

      (1) is required to register under the Sex Offender Registration and Notification Act;

      (2) (A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or

      (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and

      (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;

  shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250(a). Section 2250(b) provides an affirmative defense to a violation of § 2250(a), but Crowder has never asserted such a defense.

defendant knew that he had failed to register and *also* knew that such registration was required by SORNA.

**[2]** To address this argument, we must determine whether the word "knowingly" applies only to "fails to register or update a registration," or also applies to the phrase "as required by [SORNA]." As a general rule, the Supreme Court reads "knowingly" in a criminal statute so as to avoid criminalizing apparently innocent conduct, unless there are indicia of congressional intent to the contrary. *See, e.g.*, *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009); *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994); *Liparota v. United States*, 471 U.S. 419 (1985). *Flores-Figueroa*, for example, involved an identity theft statute imposing enhanced penalties on an offender who "knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person." 129 S. Ct. at 1888 (quoting 18 U.S.C. § 1028A(a)(1)) (internal quotation marks omitted) (emphasis omitted). The Court rejected the government's interpretation that "knowingly" applied only to the surrounding verbs, because that would require the offender to "know that he is transferring, possessing, or using that *something* without lawful authority," but not to know that the "something" was a "means of identification," which was the element that constituted the criminal offense. *Id.* at 1889.

Similarly, in *Liparota*, the Court considered a federal food stamp statute providing that "[w]hoever knowingly uses, transfers, acquires, alters, or possesses coupons or authorization cards in any manner not authorized by [law]" was subject to punishment. 471 U.S. at 420 n.1 (quoting 7 U.S.C. § 2024(b)(1)). The Court rejected the government's interpretation that "knowingly" applied only to the surrounding verbs, because that would allow the conviction of a person who knowingly acquired or possessed food stamps (which is not itself a crime) but was unaware of the facts making their acquisition or possession a crime.[3] *Id.* at 426. The Court also

---

[3]The Court observed that because food stamps could be used only at stores that charged their normal prices to food stamp participants, "[a]

held that the food stamp statute was not a "public welfare" offense (which does not require the government to prove a mental element), because such strict liability offenses criminalize only "a type of conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety," which the food stamp crime did not. *Id.* at 432-33. Absent contrary congressional intent, the Court explained, it would not interpret "knowingly" in a manner so as to "criminalize a broad range of apparently innocent conduct." *Id.* at 426; *see also X-Citement Video*, 513 U.S. at 69 (rejecting an interpretation that would have allowed the conviction of a person who knowingly transported videos but was unaware that the videos showed minors engaged in sexually explicit conduct (the element that made the offense a crime), because it would be contrary to the presumption that Congress intends "some form of scienter" in a criminal statute).

The Court's approach in *Flores-Figueroa, Liparota*, and *X-Citement Video*—namely, to avoid interpreting "knowingly" so as to "criminalize a broad range of apparently innocent conduct," *Liparota,* 471 U.S. at 426—is consistent with the long-standing rule that "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," not a "culpable state of mind" or "knowledge of the law." *Dixon v. United States*, 548 U.S. 1, 5 (2006) (quoting *Bryan v. United States*, 524 U.S. 184, 192-93 (1998) (footnote omitted)); *see also United States v. Pasillas-Gaytan*, 192 F.3d 864, 868 (9th Cir. 1999) (holding that defendant need only be aware of "the facts that make his conduct illegal") (quoting *Staples v.*

strict reading of the statute with no knowledge-of-illegality requirement would . . . render criminal a food stamp recipient who, for example, used stamps to purchase food from a store that, unknown to him, charged higher than normal prices to food stamp program participants." *Liparota*, 471 U.S. at 426.

*United States*, 511 U.S. 600, 619 (1994)) (internal quotation marks omitted).

**[3]** Read together, these cases indicate that absent clear indicia of congressional intent to the contrary, an interpretation of "knowingly" in a criminal statute should require the government to prove the defendant's knowledge of the facts that constitute the offense, *see, e.g.*, *Bryan*, 524 U.S. at 193, and should not "criminalize a broad range of apparently innocent conduct," *Liparota,* 471 U.S. at 426.

C

**[4]** We apply these principles to our interpretation of § 2250(a)(3), which punishes a sex offender who "knowingly fails to register or update a registration as required by [SORNA]." The government argues that "knowingly" applies only to "fails to register or update a registration" and not to the phrase "as required by [SORNA]." We agree that this interpretation requires the government to prove that the defendant knew the facts constituting the offense (i.e., both the registration requirement and the failure to do so) and, thus, comports with *Flores-Figueroa* and *Liparota*. Because state registration schemes have been around for years in all 50 states, *see Smith v. Doe*, 538 U.S. 84, 89-90 (2003), and convicted sex offenders know (or should know) of their own state registration requirements, a convicted sex offender who "knowingly fails to register or update a registration" is on notice or chargeable with notice of the facts constituting the offense.

**[5]** Next, we consider whether the government's interpretation would "criminalize a broad range of apparently innocent conduct." *Liparota*, 471 U.S. at 426. It would not. Because, as explained above, all 50 states have enacted criminal statutes requiring sex offenders to register, an offender "would hardly be surprised to learn" that the failure to do so "is not an innocent act." *Id.* at 433 (quoting *United States v.*

*Freed*, 401 U.S. 601, 609 (1971)) (internal quotation marks omitted). We reached a similar conclusion in interpreting 18 U.S.C. § 2423, which punishes any "person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce . . . with intent that the individual engage in prostitution." *See United States v. Taylor*, 239 F.3d 994, 997 (9th Cir. 2001). The defendant in that case argued that § 2423 should be read as requiring the government to prove that he knew the age of the individual he was transporting, not just that he was knowingly transporting her to this illicit end. We rejected this argument, in part because "the transportation of any individual for purposes of prostitution or other criminal sexual activity is already unlawful under federal law." *Id.* In other words, we held that it was sufficient for "knowingly" to apply to criminal conduct; it was not necessary for the government to prove that the defendant was also aware of the enhancement element.

By the same token, it is sufficient here to interpret "knowingly" as applying to the state criminal offense of failing to register; it is not necessary for "knowingly" to apply to the subsidiary clause "as required by [SORNA]." Indeed, this conclusion here has even more force than in *Taylor*, because the subsidiary clause merely makes the offense conduct punishable under federal law; it does not change the offense conduct or add an enhancement. As noted in *Bryan*, the use of the term "knowingly" in a criminal statute generally does not require the government to prove "knowledge of the law." 524 U.S. at 192.

**[6]** Not only is a sex offender's knowing failure to register not innocent conduct; it is also more closely analogous to a public welfare offense. The very impetus behind sex offender registration laws is that sex offenders, unlike food stamp possessors, do "seriously threaten the community's . . . safety." *Liparota*, 471 U.S. at 433. *See* 42 U.S.C. § 16901 (stating that the purpose of SORNA's registration requirement is to "protect the public from sex offenders"); *cf. X-Citement Video*,

513 U.S. at 71 (holding that a statute criminalizing the transportation, shipment, etc. of "visual depictions" of minors engaged in "sexually explicit conduct" was not a public welfare offense because people "do not harbor settled expectations that the contents of magazines and film are generally subject to stringent public regulation"). The failure of a convicted sex offender to register is "conduct that a reasonable person should know is subject to stringent public regulation and may seriously threaten the community's health or safety," *Liparota*, 471 U.S. at 433, much like the receipt or possession of an unregistered firearm, *see United States v. Freed*, 401 U.S. 601, 609 (1971), or the shipment of adulterated and misbranded drugs, *see United States v. Dotterweich*, 320 U.S. 277, 284 (1943). In sum, a convicted sex offender who knowingly fails to register would ordinarily be committing a crime, regardless whether that individual knows such failure also violates SORNA.

**[7]** Finally, we see no indicia of congressional intent weighing against the government's more natural reading of the statute. To the contrary, requiring the government to prove knowledge of the federal registration requirements would likely make it more difficult for the government to prosecute convicted sex offenders who knowingly evade their state registration requirements, and thus potentially undermine Congress's goal of alerting communities to the presence of sex offenders via a nationwide network of state registries. *See* 42 U.S.C. § 16901 (stating SORNA's purpose as the protection of "the public from sex offenders"); *Baccam*, 562 F.3d at 1200. Indeed, no indicium of congressional intent weighs against the more natural reading of the statute.

Crowder raises one additional argument as to why § 2250 requires proof that a defendant knew that registration was required by SORNA.[4] According to Crowder, the language in

---

[4]Crowder did not develop his arguments that SORNA is unconstitutional as applied because Congress's delegation of authority to the Attor-

42 U.S.C. §§ 16913(d) and 16917(b) show that Congress intended to condition criminal liability on a defendant's receipt of actual notice, as prescribed by the Attorney General. *See* 42 U.S.C. § 16913(d) (giving the Attorney General authority to determine how SORNA will apply to sex offenders convicted before SORNA's enactment); *id.* § 16917(b) (requiring the Attorney General to "prescribe rules for the notification of sex offenders who cannot be registered in accordance with subsection (a) [requiring an 'appropriate official' to ensure that the sex offender is registered]"). This argument fails. Section 16913(d) does not create a notification requirement, but rather, merely authorizes the Attorney General to determine how SORNA applies retroactively. Section 16917(b), meanwhile, authorizes the Attorney General to promulgate regulations to notify sex offenders who were not already notified of their registration requirement by an "appropriate official." Neither provision suggests that Congress intended to eliminate criminal liability for a convicted sex offender who knowingly failed to register in a state registry simply because he did not know that registration was also required by SORNA.

[8] In light of this analysis, we interpret § 2250(a)(3) as requiring the government to prove that a convicted sex offender knew of a registration requirement and knowingly failed "to register or update a registration." It does not require the government to prove that the sex offender also knew that the failure to register violates SORNA. This interpretation is consistent with the Supreme Court's rule that generally "the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense," *Bryan*, 524 U.S. at 193,

ney General under § 16913(b) violated separation-of-powers principles, or that his due process rights were violated by the Attorney General's failure to promulgate regulations to notify sex offenders who could not be notified by an "appropriate official" pursuant to § 16917. Thus, we do not address them. *See United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005).

while also ensuring that the defendant cannot be convicted of apparently innocent conduct. *See, e.g.*, *Liparota*, 471 U.S. at 426. In so holding, we join our sister circuits, all of which have read the word "knowingly" in § 2250(a)(3) as not applying to the "as required by [SORNA]" clause. *See United States v. Stevens*, 640 F.3d 48, 51-52 (1st Cir. 2011); *United States v. Fuller*, 627 F.3d 499, 507-08 (2d Cir. 2010); *United States v. Vasquez*, 611 F.3d 325, 328-29 (7th Cir. 2010), *cert. denied*, 131 S. Ct. 2930 (2011); *United States v. Shenandoah*, 595 F.3d 151, 159 (3d Cir.), *cert. denied*, 130 S. Ct. 3433 (2010); *United States v. Griffey*, 589 F.3d 1363, 1367 (11th Cir. 2009) (per curiam), *cert. denied*, 130 S. Ct. 3290 (2010); *United States v. Whaley*, 577 F.3d 254, 262 n.6 (5th Cir. 2009); *United States v. Gould*, 568 F.3d 459, 468 (4th Cir. 2009), *cert. denied*, 130 S. Ct. 1686 (2010); *Baccam*, 562 F.3d at 1199-1200.

## III

**[9]** We now apply this interpretation of § 2250 to Crowder's case. Although Crowder did not receive notice of the requirement to register under SORNA, the government did not have to prove that Crowder knew of this requirement in order to convict him of an offense under § 2250. Crowder was required by the terms of his judgment to register in Washington as well as in any new state to which he moved. Indeed, his registration form advised him that he needed to update his registration in Washington before he moved to another state. In short, there was ample evidence on which the district court could base its determination that Crowder knew that he was required to register and failed to do so. *See Jackson v. Virginia*, 443 U.S. 307 (1979). Accordingly, we reject Crowder's sufficiency of the evidence challenge.

**AFFIRMED**.