**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 11-10606 |
| v. | D.C. No. 3:09-cr-00268-SI-1 |
| ALEXANDER DEJARNETTE, JR., *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, Senior District Judge, Presiding

Argued and Submitted
January 14, 2013—San Francisco, California

Filed December 20, 2013

Before: John T. Noonan, A. Wallace Tashima,
and Susan P. Graber, Circuit Judges.

Opinion by Judge Tashima;
Dissent by Judge Graber

## SUMMARY[*]

### Criminal Law

The panel reversed a judgment of conviction for failure to register as a sex offender in violation of the Sex Offender Registration and Notification Act, and remanded for entry of a judgment of acquittal.

The panel held that the Attorney General has not yet "validly specifie[d]" that 42 U.S.C. § 16913(a)'s requirement of registration in the jurisdiction of the sex-offense conviction (if different from the jurisdiction of residence) applies to pre-Act offenders like the defendant who were, at the time of SORNA's enactment and implementation, already subject to sex offender registration obligations. The panel concluded that the district court's jury instruction erroneously permitting the jury to convict solely on the basis of the defendant's failure to register in the jurisdiction of his sex-offense conviction was not harmless.

Dissenting, Judge Graber wrote that the Attorney General's regulations validly specify that SORNA's registration requirements apply to all sex offenders, including pre-SORNA offenders; that the defendant was notified of his initial registration requirement in the jurisdiction of his sex-offense conviction; and that the jury was properly instructed.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Mark D. Eibert (argued), Half Moon Bay, California, for Defendant-Appellant.

Susan B. Gray (argued), Assistant United States Attorney; Melinda Haag, United States Attorney; Barbara J. Valliere, Assistant United States Attorney, San Francisco, California, for Plaintiff-Appellee.

**OPINION**

TASHIMA, Circuit Judge:

Alexander DeJarnette is a federal sex offender who failed to register as such and was convicted of violating the Sex Offender Registration and Notification Act ("SORNA"). Pub. L. No. 109-248, 120 Stat. 587 (codified at 42 U.S.C. §§ 16901 *et seq.*, 18 U.S.C. § 2250 (2006)). On appeal, he challenges the district court's interpretation of SORNA as imposing upon him an obligation to register in the jurisdiction of his sex-offense conviction, the Northern District of California, even though the evidence shows that he resided in a different jurisdiction (the State of Georgia) throughout the period charged in his indictment. He contends that, because he had no legal duty to register in the Northern District of California, the district court's contrary jury instruction was erroneous as a matter of law, venue was improper in the Northern District of California, and his nonregistration conviction is not supported by sufficient evidence. We have jurisdiction under 28 U.S.C. § 1291 and, for the following reasons, we reverse the conviction.

**I.**

In 2001, in the U.S. District Court for the Northern District of California, DeJarnette was convicted of two counts of transporting minors with intent to engage in prostitution and criminal sexual activities, in violation of 18 U.S.C. § 2423(a), and one count of transportation with intent to engage in prostitution and criminal sexual activity, in violation of 18 U.S.C. § 2421. In his guilty plea, DeJarnette acknowledged that he may be required to register as a sex offender under state or federal law. He was sentenced to 96 months' imprisonment and 36 months' supervised release. Corrections officials at the United States Penitentiary in Lompoc, California, where DeJarnette was incarcerated, informed him of his duty to register as a sex offender in any state where he resided, was employed, or attended school; DeJarnette refused to sign the notification form.

DeJarnette entered the supervised-release program in 2006. The terms of his supervised release prohibited DeJarnette from leaving the judicial district without permission of the court or a probation officer. With regard to sex-offender registration, the terms of his supervised release additionally stated:

> If required by the state to which the defendant is released from custody, and if so directed by the U.S. Probation Officer, the defendant is ordered to report, as directed by the United States Probation Officer, to the local law enforcement authority so that they may determine whether he must register as a sex offender.

Judgment at 4, *United States v. DeJarnette*, No. 3:99-cr-003510SI-1 (N.D. Cal. Feb. 21, 2001), ECF No. 116.

In January 2007, a federal probation officer notified DeJarnette of his duty under California law to register as a sex offender; he refused to sign the notification form. DeJarnette asserts that he then unsuccessfully challenged the registration requirement in state court.

Later that month, the probation officer petitioned the district court in the Northern District of California for a supervised release violation summons, alleging that DeJarnette had violated the terms of his supervised release by failing to register as a sex offender. DeJarnette was found guilty of violating several other conditions of his supervised release, and the court warned DeJarnette to register as a sex offender by March 13, 2008, or else be found in violation of the registration condition as well. A warrant was issued for his arrest. DeJarnette did not register.

On March 17, 2008, the government asked the district court to impose an additional supervised release condition requiring that DeJarnette register as a sex offender pursuant to SORNA. DeJarnette absconded.[1]

Authorities apprehended DeJarnette in Atlanta, Georgia, in December 2008. He maintains that he resided in Georgia in the months preceding his arrest. DeJarnette had not registered as a sex offender in Georgia.

---

[1] DeJarnette later admitted that he left the Northern District of California, without permission, in March 2008.

In March 2009, a grand jury in the Northern District of California indicted DeJarnette on charges of violating SORNA by failing to register as a sex offender beginning on or about March 14, 2008. The district court dismissed the indictment, holding that it violated the terms of DeJarnette's plea agreement. The government appealed, and this Court reversed and remanded. *United States v. DeJarnette*, 403 F. App'x 188 (9th Cir. 2010).

SORNA was enacted on July 27, 2006 – more than five years after DeJarnette was convicted of a registrable sex offense. In 2010, we determined that SORNA's "retroactivity provision" – the provision that imposes registration requirements on pre-Act offenders like DeJarnette – "did not become effective until August 1, 2008." *United States v. Valverde*, 628 F.3d 1159, 1160 (9th Cir. 2010). In response to our *Valverde* decision, the government obtained a superseding indictment that charged DeJarnette with violating SORNA by failing to register as a sex offender in the Northern District of California between August 2, 2008 and December 27, 2008.

Before trial, DeJarnette objected to the government's proposed jury instruction setting forth the registration requirements under SORNA. The proposed instruction stated in pertinent part:

> SORNA requires a sex offender initially to register in the jurisdiction in which the sex offender was convicted of the sex offense that led to the registration requirement, if this jurisdiction is different from the jurisdiction of residence.

United States' Proposed Jury Instructions at 36, ECF No. 197. DeJarnette argued that the instruction misstated the law and that he was under no SORNA obligation to register in the Northern District of California. The government construed DeJarnette's opposition to the instruction as a claim of improper venue and asked the court for a pretrial ruling on venue, so as to preserve the government's right to appeal an adverse ruling before jeopardy attached. On the eve of trial, the district court ruled that DeJarnette "had a duty to complete his initial registration pursuant to SORNA in the district in which he was convicted – this [Northern] District [of California] – even if it was different from his jurisdiction of residence at that time[,]" and that the jury would be so instructed. Order, ECF No. 205.

At the conclusion of a two-day trial, the jury was instructed that "SORNA requires a sex offender initially to register in the jurisdiction in which the sex offender was convicted of the sex offense that led to the registration requirement, if this jurisdiction is different from the jurisdiction of residence." Instructions to Jury at 6, ECF No. 214. The jury was also instructed on the elements of the nonregistration offense, including the government's burden of showing "[t]hat during the time in between August 2, 2008 and December 27, 2008 in the Northern District of California, the defendant knowingly failed to register or keep his registration current as required by SORNA." *Id.* DeJarnette was convicted and sentenced to 37 months' imprisonment followed by five years' supervised release.[2]

---

[2] DeJarnette was released from custody in December 2011. He failed to report to his probation officer and was a fugitive when his opening brief was filed. He has since been rearrested.

## II.

We review *de novo* the district court's interpretation of SORNA. *See United States v. Mattix*, 694 F.3d 1082, 1084 (9th Cir. 2012); *United States v. Begay*, 622 F.3d 1187, 1193 (9th Cir. 2010). We also review *de novo* DeJarnette's challenges to the jury instructions, the sufficiency of the evidence, and the propriety of venue. *See United States v. Sullivan*, 522 F.3d 967, 974 (9th Cir. 2008); *United States v. Valdez-Santos*, 457 F.3d 1044, 1046 (9th Cir. 2006); *United States v. Shipsey*, 363 F.3d 962, 967 n.3 (9th Cir. 2004).

## III.

## A.

SORNA requires that all state and federal sex offenders "register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913(a). Subsection (a) of the statute further provides that, "[f]or initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence." *Id.*

Subsection (b) then explains that offenders "shall initially register" as follows:

> (1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or

> (2) not later than 3 business days after being
> sentenced for that offense, if the sex offender
> is not sentenced to a term of imprisonment.

§ 16913(b). As the text makes clear, subsection (b) sets forth a forward-looking scheme: it addresses offenders who, at the time of SORNA's enactment, were not yet subject to reporting obligations because they were still incarcerated, § 16913(b)(1), or had not yet been sentenced for the sex offense, § 16913(b)(2). Thus, the "initial registration" scheme described in subsections (a) and (b) does not, by its terms, apply retroactively to pre-Act offenders – individuals like DeJarnette, whose 2001 sex-offense convictions long pre-date SORNA's 2006 enactment. *See Reynolds v. United States*, 132 S. Ct. 975, 982 (2012) (noting that subsection (b) "says nothing about when a pre-Act offender who completed his prison term pre-Act must register").

The government argues the "initial registration" requirement of registration in the jurisdiction of the sex offense conviction (where different from the jurisdiction of residence) nonetheless applies to pre-Act offenders like DeJarnette. It points to subsection (d) of the statute, which carries the title "[i]nitial registration of sex offenders unable to comply with subsection (b)." § 16913(d). Subsection (d) states in full:

> The Attorney General shall have the authority
> to specify the applicability of the
> requirements of this subchapter to sex
> offenders convicted before the enactment of

> this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b).

*Id.*

Pursuant to the delegation of subsection (d)'s rulemaking authority, the Attorney General promulgated guidelines called Sentencing Monitoring, Apprehending, Registering, and Tracking – the "SMART" guidelines. *See* 72 Fed. Reg. 30,210 (May 30, 2007) (preliminary guidelines); 78 Fed. Reg. 38,030 *et seq.* (July 2, 2008) (final guidelines). The Supreme Court has since determined that SORNA does not "require[] pre-Act offenders to register before the Attorney General validly specifies that the Act's registration provisions apply to them." *Reynolds*, 132 S. Ct. at 982. Thus, we ask whether the Attorney General has "validly specifie[d]" that subsection (a)'s requirement of "initial registration" in the jurisdiction of the sex-offense conviction (where different from the jurisdiction of residence) applies to offenders like DeJarnette – offenders who were, at the time of SORNA's enactment and implementation, already subject to sex-offender registration obligations under a pre-SORNA scheme. We conclude that he has not.

## 1. *SMART Guidelines*

The SMART guidelines declare that "SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA." The

National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,063 (July 2, 2008) ("SMART Guidelines"). The guidelines also acknowledge, however, that "the normal initial registration procedure . . . will not be feasible in relation to certain special classes of sex offenders." *Id.* The "specific problem," according to the guidelines, "is one of timing":

> [I]t is not always possible to carry out the initial registration procedures for sex offenders who are required to register under SORNA prior to release from imprisonment (or within three days of sentencing) for the registration offense. The situations in which there may be problems of this type, and the rules adopted for those situations are as follows . . . .

*Id.*

Then, under the heading "Retroactive Classes," the guidelines go on to provide three examples that purportedly illustrate the initial registration of pre-Act offenders and announce the "rules adopted" for such offenders. *Id.* The first and second examples concern offenders like DeJarnette: "sex offenders with pre-SORNA or pre-SORNA implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation." *Id.* For such offenders, the guidelines state that "jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible, including fully instructing them about the SORNA requirements, obtaining signed acknowledgments of such instructions, and

obtaining and entering into the registry all information about them required under SORNA." *Id.*

In the government's view, the last-quoted sentence shows that the guidelines require offenders like DeJarnette to "initially register . . . as quickly as possible" in the jurisdictions of their sex-offense convictions. As an initial matter, we note that the quoted language is addressed to *jurisdictions*, not offenders.[3] We question whether this jurisdiction-directed language "validly specifies that the Act's [initial] registration provisions apply" to *any* pre-Act offenders.[4] *Reynolds*, 132 S. Ct. at 982. But we leave that question for another day because, to the extent that the guidelines apply subsection (a)'s initial registration requirement to any pre-Act offenders, they do so only for the subset of pre-Act offenders who were not already subject to registration requirements under pre-SORNA law. We reach this conclusion following a careful examination of the guideline examples that announce the "rules adopted" for pre-Act offenders who remained on supervised release at the time

---

[3] *See* SMART Guidelines, 73 Fed. Reg. at 38,063 ("[*J*]*urisdictions* should endeavor to register them in conformity with SORNA as quickly as possible . . . ." (emphasis added)); *id.* ("*Jurisdictions* are accordingly authorized to phase in SORNA registration for such sex offenders in conformity with the [periodic in-person] appearance schedule of SORNA § 116[, 42 U.S.C. 16916]." (emphasis added)); *id.* at 38,063–64 ("In other words, sex offenders . . . must be registered *by the jurisdiction* when it implements the SORNA requirements in its system . . . ." (emphasis added)).

[4] In the same vein, our dissenting colleague assumes without discussion that a regulation directed to registering jurisdictions that such jurisdictions should "endeavor to register [pre-SORNA offenders] in conformity with SORNA as quickly as possible," is sufficient notice to a pre-SORNA offender of his obligation to register. *See* Dissent at 35–36.

of SORNA's implementation.[5]  SMART Guidelines, 73 Fed. Reg. at 38,063.

   "Example 1" describes a pre-Act offender who was "not registered near the time of sentencing or before release from imprisonment, because the state did not require registration for the offense in question at the time." *Id.*  The guidelines state that it will be "impossible" to register such an offender "near the time of his sentencing or before his release from imprisonment, because that time is past." *Id.*  This example also discusses a pre-Act offender under American Indian tribal law who "may not have been registered near the time of sentencing or release because the tribe had not yet established any sex offender registration program at the time." *Id.*  Such an offender would be required to register "by the SORNA standards" if he or she remained under supervision when the tribe implemented SORNA, "but the normal time frame for initial registration under SORNA will have passed . . . , so registration within that time frame is impossible." *Id.*

---

   [5] The dissent observes that the guidelines' examples are only illustrative. Dissent at 36.  While this may be true, nonetheless, the examples clarify the meaning of the text to which they apply. *See Tull v. United States*, 69 F.3d 394, 397–98 (9th Cir. 1995) (concluding that examples offered in Treasury regulations, "[w]hile . . . not directly on point, . . . are redolent with meaning both in what they do say and in what they do not say").  We do not claim the examples' support because they are "identical to Defendant's situation."  Dissent at 36.  Rather, "what [the examples] do say and . . . do not say" – their referring to a pre-Act offender as "initially registered" under a pre-SORNA scheme and their failure to say anything about initial registration in the offender's jurisdiction of conviction, *see infra* – leads us to our conclusion.

Example 1 suggests that, to the extent the Attorney General has applied "initial registration" to pre-Act offenders at all, that application is limited to offenders who – like the offenders in example 1 – had no registration obligations prior to SORNA. By contrast, DeJarnette has been subject to registration requirements under California law since 2006, when he was released from custody and entered the supervised release program.[6]

"Example 2" suggests that a registration obligation under a pre-SORNA scheme operates as the initial registration of a pre-Act offender. SMART Guidelines, 73 Fed. Reg. at 38,063. This example describes an offender who "was initially registered prior to his release from imprisonment on the basis of the jurisdiction's existing law," but was not subject to an ongoing registration requirement resembling SORNA's periodic in-person verification scheme. *Id.*; *see* 42 U.S.C. § 16916. The guidelines state that such an offender "will have to be required to appear periodically for

---

[6] DeJarnette's state-law registration obligation remained in effect on August 1, 2008 – the date on which SORNA's retroactivity provision became effective. *See Valverde*, 628 F.3d at 1160. Accordingly, we need not and do not determine whether the Attorney General has articulated with sufficient clarity the initial registration requirement that applies to pre-Act offenders who were under no existing registration obligations on August 1, 2008.

We express no view as to whether DeJarnette, a federal sex offender, also had an existing registration obligation under SORNA's precursor, the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act ("Wetterling Act"), Pub. L. No. 103-322, §§ 170101-170303, 108 Stat. 1796, 2038–45 (1994).

verification." SMART Guidelines, 73 Fed. Reg. at 38,063. Example 2's use of the phrase "initially registered" in connection with a pre-SORNA registration scheme tells us that "initial registration" is not a term of art; it simply refers to the first time that an offender is required to register.

We also find it telling that periodic in-person verification is the *only* SORNA registration obligation that Example 2 imposes on pre-Act offenders who were subject to existing registration obligations when SORNA went into effect.[7] The Attorney General could have used this example to also impose the requirement of registration in the jurisdiction of conviction where different from the jurisdiction of residence; he did not. We cannot help but conclude that the SMART guidelines do not apply the requirement of initial registration in the jurisdiction of conviction to pre-Act offenders who, like DeJarnette, were subject to existing registration obligations upon SORNA's enactment and implementation. Such offenders either initially register under an existing state or federal scheme, or they violate state or pre-SORNA federal

---

[7] The fact that "the offender in Example 2 was already part of an earlier *registered* sex offender population," Dissent at 37, does not explain away the example's failure to mention anything about "initial registration" in the offender's jurisdiction of conviction. Under the dissent's reading of "initial registration," the fact of an offender's prior registration is irrelevant to the offender's obligation to register in her jurisdiction of conviction: even *registered* pre-Act offenders would be required to register "initially" in their jurisdictions of conviction. The example's failure to mention such a requirement is equally anomalous whether the sex offender is or is not "part of an earlier registered sex offender population." Thus, we find the anomaly telling.

law by failing to do so.**[8]**    In any event, they have no initial registration obligations under SORNA § 16913(a).**[9]**

## 2.  Codified Examples

Our conclusion finds further support in the Department of Justice's most recent codification of rules regarding SORNA's retroactive applicability. *See* 28 C.F.R. § 72.3 (2011).  The retroactivity regulation begins with the familiar refrain that "[t]he requirements of [SORNA] apply to all sex offenders," including pre-Act offenders. *Id.*   But the regulation goes on to provide two illustrations, both of which suggest that an offender's pre-SORNA registration obligation is an "initial registration":

> Example 1.   A sex offender is federally
> convicted of aggravated sexual abuse under
> 18 U.S.C. 2241 in 1990 and is released

---

[8]  SORNA did not absolve pre-Act offenders of their existing registration obligations. *See United States v. Kebodeaux*, 133 S. Ct. 2496, 2502 (2013) (sex offender convicted of failure to register under SORNA was subject, at the time of his sex offense conviction, to registration obligations under the federal Wetterling Act); *Carr v. United States*, 560 U.S. 438, 130 S. Ct. 2229, 2238–39 (2010) (noting that "federal sex-offender registration laws have, from their inception, expressly relied on state-level enforcement" and that SORNA serves to "strengthen state enforcement of registration requirements").

[9] That DeJarnette failed to register under California law, despite an obligation to do so, has no bearing on the issue before us.  Our task is simply to determine whether SORNA imposed upon DeJarnette an obligation to register in the jurisdiction of his conviction, which was indisputably different from his jurisdiction of residence at all relevant times.    We conclude, based on the language of the statute and implementing guidelines, that it does not.

following imprisonment in 2007. The sex
offender is subject to the requirements of
[SORNA] and could be held criminally liable
under 18 U.S.C. 2250 for failing to register or
keep the registration current in any
jurisdiction in which the sex offender resides,
is an employee, or is a student.

*Id.* Example 1 applies the ongoing registration requirement
described in § 16913(a) – registration in the jurisdictions of
residence, employment, and education – while notably
omitting any mention of registration in the jurisdiction of
conviction. *Expressio unius est exclusio alterius* and,
accordingly, we again question whether the Attorney General
has applied the requirement of registration in the jurisdiction
of conviction to *any* pre-Act offenders. But, as we have said,
the case before us concerns only one subcategory of pre-Act
offenders – offenders who were already subject to registration
obligations when SORNA took effect – and we decide only
the case before us.

The second example addresses such offenders:

Example 2. A sex offender is convicted by a
state jurisdiction in 1997 for molesting a child
and is released following imprisonment in
2000. The sex offender *initially registers* as
required but relocates to another state in 2009
and fails to register in the new state of
residence. The sex offender has violated the
requirement under [SORNA] to register in any
jurisdiction in which he resides, and could be
held criminally liable under 18 U.S.C. 2250

for the violation because he traveled in interstate commerce.

28 C.F.R. § 72.3 (emphasis added).    Like the SMART guidelines, Example 2 of the codified regulations specifically addresses pre-Act offenders who were subject to existing reporting obligations, and it expressly refers to a pre-SORNA registration as an "initial" registration.    Example 2 then applies to such pre-Act offenders the ongoing registration requirements of § 16913(a) & (c) – that is, registration in the jurisdictions of residence, employment, or education, and the requirement to keep the registration current following a change of jurisdiction – rather than § 16913(a)'s "initial registration" requirement of registration in the jurisdiction of conviction.

\*    \*    \*

We have searched in vain for any indication that the Attorney General has applied the "initial registration" requirement of registration in the jurisdiction of conviction, § 16913(a), to pre-Act offenders who were already required to register under some pre-SORNA scheme.[10]   But we are not surprised by the Attorney General's silence.    In fact, we think it comports with the ordinary meaning of the word "initial" as

---

[10] Emblematic of the weakness of the dissent's position is its reliance on the Attorney General's statement that "SORNA applies to *all* sex offenders."    Dissent at 34 (quoting 73 Fed. Reg. at 38,063 (emphasis added by dissent)).    But this general statement says nothing about when, how, and under what circumstances a pre-SORNA offender is required to register or initially register.

"of or relating to the beginning," "incipient," or "first."**[11]** If "initial registration" simply refers to the first time that an offender registers – whether under SORNA or some pre-existing scheme – then the Attorney General quite sensibly did not apply the initial registration requirement of § 16913(a) to such pre-Act offenders.**[12]** Indeed, it is only by contorting the English language that a pre-Act offender can

---

[11] *Initial*, MERRIAM-WEBSTER, http://www.merriam-webster.com/dictionary/initial (last visited December 3, 2013).

[12] Our dissenting colleague contends that, were we to attend to "the broader purpose and structure of the [Initial Registration] section," Dissent at 36, we would conclude that the Attorney General *had* applied the initial registration requirement of § 16913(a) to offenders like DeJarnette, *id.* at 34–37. We disagree. The paragraph on which the dissent relies to support this contention also omits any mention of "initial registration" in pre-Act offenders' jurisdictions of conviction. SMART Guidelines, 73 Fed. Reg. at 38,063. Indeed, the jurisdiction in which a pre-Act offender lives, works, or studies could perform all of the functions listed in the paragraph equally as well as, if not better than, his jurisdiction of conviction. *Cf. id.* at 38,061 (indicating that the initial registration requirement seeks to ensure registration by the jurisdiction "in the best position initially to [do so]").

The paragraph's use of the term "re-registering" does not alter our conclusion. The jurisdiction in which a sex offender lives, works, or studies might also need to "re-register[]" the offender when undertaking to register pre-Act offenders "in conformity with SORNA." *Id.* at 38,063; *see also* 42 U.S.C. § 16913. The facts that (a) the example and following paragraph are equally as consistent with a scheme of "re-regist[ration]" in the jurisdiction of residence, work, or study, and (b) neither the example nor the paragraph mentions anything about "initial registration" in the jurisdiction of conviction suggest that the Attorney General did not intend for a second, "initial" registration in an offender's jurisdiction of conviction. Even if the guidelines were unclear on the point, we would conclude that the principle of lenity counsels in favor of our approach. *See United States v. Bass*, 404 U.S. 336, 347 (1971).

"initially" register – for a second time – if that offender has already registered under state or pre-SORNA federal law.[13]

**B.**

Our dissenting colleague argues that § 16913(a) mandates "initial registration" (and, accordingly, registration in the jurisdiction of conviction) for *all* sex offenders. Dissent at 31–32. On this view, subsection (a) sets forth the substantive requirements related to initial registration, and subsection (b) is procedural – it relates solely to the timing of initial registration. Subsection (d) acknowledges that some offenders will be "unable to comply" with the procedure outlined in subsection (b), and it delegates to the Attorney General a narrow power to prescribe rules for offenders who cannot comply with the timing requirements of subsection (b). In the dissent's view, the Attorney General's regulation does not alter the substantive requirements of subsection (a) – most notably, the initial registration requirement of registration in the jurisdiction of conviction. *See* Dissent at 34. We disagree, for three reasons.

---

[13] We note that in the context of an offender's standing to challenge SORNA's delegation of rulemaking authority to the Attorney General under § 16913(d), sister circuits have held that "sex offenders who were convicted prior to SORNA's enactment and who *already initially registered* as sex offenders with their respective states" lacked standing to bring a nondelegation challenge because such offenders were able to comply with the initial registration requirement, and subsection (d) delegates the authority to make rules for "offenders who are unable to comply" with the initial registration procedure outlined in subsection (b). *United States v. Guzman*, 591 F.3d 83, 92 (2d Cir. 2010) (citing cases). In other words, we are not the first circuit to conclude that a pre-SORNA registration obligation operates as the "initial registration" of a pre-Act offender.

First, the argument assumes that "initial registration" means something other than the first time an offender registers, and that the term instead encompasses a substantive requirement of registration in the jurisdiction of conviction as provided by subsection (a). It bears repeating that this assumption runs counter to the plain meaning of "initial." The assumption is also seriously undermined by the Attorney General's own use of the term "initial registration" when describing registration under a pre-SORNA scheme.[14] If the Attorney General disagrees with our reading of the statute and implementing guidelines, he is free to specify – with what we hope will be some measure of clarity, and with language directed at the offenders rather than the implementing jurisdictions[15] – whether, when, and how a pre-Act offender is required to "initially register" in the jurisdiction of the underlying sex-offense conviction. He has not yet done so and we cannot amend the regulation on the Attorney General's behalf.

Second, even if "initial registration" meant something other than the first time that an offender registers, we see no reason to assume that the Attorney General was mandated to apply *all* of SORNA's registration requirements to *all* pre-Act offenders. The Attorney General's authority under subsection (d) is a broad one: it is an authority to "specify *whether* [SORNA] applie[s] to individuals convicted of a sex offense

---

[14] *See* SMART Guidelines, 73 Fed. Reg. at 38,063 (giving the example of a pre-Act offender who "initially registered" under a pre-SORNA law that did not require periodic in-person verification); 28 C.F.R. § 72.3 (giving the example of a pre-Act offender who is released from custody in 2000 and "initially registers as required but relocates" to a new state without registering).

[15] *Cf.* SMART Guidelines, 73 Fed. Reg. at 38,063.

before the statute's July 2006 enactment." *Valverde*, 628 F.3d at 1163 (emphasis added); *see also United States v. Johnson*, 632 F.3d 912, 923 (5th Cir. 2011) (holding that subsection (d) "delegates to the Attorney General the decision of *whether* and *how* the SORNA registration requirements apply to offenders with pre-enactment convictions" (emphases added)); *United States v. Madera*, 528 F.3d 852, 858 (11th Cir. 2008) ("Subsection (d) . . . granted the Attorney General unfettered discretion to determine both *how* and *whether* SORNA was to be retroactively applied."). The dissent's narrow view of this delegated power is, in essence, the view expressed by the dissenting Justices in *Reynolds* and rejected by a majority of the Supreme Court.[16] We are bound by *Reynolds*, which teaches that "the Act's registration requirements do not apply to pre-Act offenders until the Attorney General so specifies." 132 S. Ct. at 984. If one of those registration requirements is, as argued by our dissenting colleague, the requirement of "initial registration" in the jurisdiction of conviction, where different from the jurisdiction of residence, then the requirement cannot apply to DeJarnette "until the Attorney General so specifies" – and that he has not yet done.

Third, we believe that our approach better comports with the purpose and structure of the initial registration requirement. That requirement seeks primarily to ensure the

---

[16] *Compare Reynolds*, 132 S. Ct. at 986 (Scalia, J., dissenting) ("[I]t is simply implausible that the Attorney General was given discretion to determine whether coverage of pre-Act offenders (one of the purposes of the Act) should exist."), *with id.* at 984 (majority opinion) ("There is . . . no need to read the language [of subsection (d)] unnaturally as giving the Attorney General the authority only to make exceptions from an implicit (unstated) rule that would otherwise apply the new registration requirements to all pre-Act offenders across the board and immediately.").

timely receipt, verification, and posting of registration information, as well as to notify offenders of their obligations under SORNA. *See* SMART Guidelines, 73 Fed. Reg. at 38,063. These objectives are not served by requiring pre-Act offenders like DeJarnette to travel back to their jurisdictions of conviction to file potentially duplicative registrations of the registrations filed in their jurisdictions of residence, work, or study. We agree with our dissenting colleague that Congress intended with SORNA to make a more uniform and effective registration system. Dissent at 38 (citing *Reynolds*, 132 S. Ct. at 978, 981). But we disagree that our approach disserves that end.[17] "[J]urisdictions" must still register pre-Act offenders "in conformity with SORNA," SMART Guidelines, 73 Fed. Reg. at 38,063, thereby creating a uniform registration system. But, at most, only an offender's jurisdiction of residence, work, or study need "re-register[]" him. *Id.* The purposes of the initial registration requirement are not served by a contrary rule. Again, if the Attorney General disagrees with our reading of the guidelines, he may so specify.

## IV.

We conclude that the Attorney General has not yet "validly specifie[d]" that SORNA § 16913(a)'s requirement of registration in the jurisdiction of the sex-offense conviction (if different from the jurisdiction of residence) applies to pre-Act offenders who were, at the time of SORNA's enactment

---

[17] We note that the dissent's approach, in requiring potentially duplicative registrations, could increase delays in processing of pre-Act offenders by increasing a backlog of registrations. *Cf.* SMART Guidelines, 73 Fed. Reg. at 38,063–64 (taking steps to accommodate and relieve that anticipated backlog).

and implementation, already subject to sex offender registration obligations. *Reynolds*, 132 S. Ct. at 982. DeJarnette is a federal sex offender whose jurisdiction of conviction, the Northern District of California, is not the same as his jurisdiction of residence during the charged period: the State of Georgia. Accordingly, we agree with DeJarnette that the district court gave an erroneous jury instruction, and we conclude that the error was not harmless.

## A.

DeJarnette's superseding indictment charged that "[b]eginning on or about August 2, 2008, and continuing through at least December 27, 2008, in the Northern District of California," DeJarnette "did knowingly fail to register as required by the Sex Offender Registration and Notification Act, all in violation of Title 18, United States Code, section 2250(a)." DeJarnette has consistently maintained that he resided in Georgia during the period charged in the indictment. At trial, DeJarnette's probation officer – a government witness – testified that DeJarnette resided in Atlanta during the charged period, and the government essentially conceded that DeJarnette was not in the Northern District of California during the relevant dates. Instead, the government argued that DeJarnette was required to register in the Northern District of California, the jurisdiction of his sex-offense conviction, by virtue of SORNA's "initial registration" requirement.

Consistent with the government's view, the jury was instructed on the elements of the failure-to-register offense, as follows:

*First*: That the defendant is a sex offender for purposes of SORNA, by reason of a conviction under federal law;

*Second*: That the defendant is required to register under SORNA; and

*Third*: That, during the time in between August 2, 2008 and December 27, 2008 in the Northern District of California, the defendant knowingly failed to register or keep his registration current as required by SORNA.

Instructions to Jury at 6, ECF No. 214. The instructions then elaborated on the initial registration requirement:

SORNA requires a sex offender initially to register in the jurisdiction in which the sex offender was convicted of the sex offense that led to the registration requirement, if this jurisdiction is different from the jurisdiction of residence.

SORNA requires a sex offender to register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee and where the offender is a student.

*Id.* The instructions contained an error of law in that they permitted the jury to convict solely on the basis of DeJarnette's failure to register in the jurisdiction of his sex offense conviction. *See id.* We therefore turn to whether the error is cause for reversal.

**B.**

DeJarnette's claim of error relating to the jury instructions, preserved by way of objection at trial, is subject to harmless-error analysis. *See United States v. Munguia*, 704 F.3d 596, 598 (9th Cir. 2012). "An error in describing an element of the offense in a jury instruction is harmless only if it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *Id.* at 604 (internal quotation marks omitted).

We conclude that the error is harmful because the government presented no evidence indicating that DeJarnette resided, was employed, or was a student in the Northern District of California during the charged period. Thus, absent the incorrect instruction regarding DeJarnette's duty to register in the jurisdiction of his sex-offense conviction (the Northern District of California), the jury could not have returned a finding of guilt.

The government correctly notes that SORNA also imposes an ongoing registration requirement on sex offenders and, citing that requirement, the government argues that the district court properly instructed the jury that DeJarnette was required to "keep his registration current" in the Northern District of California.[18]   Although the jury was indeed permitted to find guilt if DeJarnette failed to "keep the registration current, in each jurisdiction where the offender resides," the presence of this instruction does not render harmless the earlier instruction error.

---

[18] Although the government's argument is not framed in terms of harmless error, we find it applicable in this context.

Subsection (c) of the statute sets forth the keeping-current requirement:

> A sex offender shall, not later than 3 business days after each change of name, residence, employment, or student status, appear in person in at least 1 jurisdiction involved pursuant to subsection (a) and inform that jurisdiction of all changes in the information required for that offender in the sex offender registry.

42 U.S.C. § 16913(c).  As a pre-Act offender, DeJarnette can only be punished for nonregistration offense conduct occurring on or after August 1, 2008 – the date on which SORNA's retroactivity provision took effect – and there is no evidence that DeJarnette violated subsection (c) on or after that date.  *See Valverde*, 628 F.3d at 1160.

The evidence indicates that DeJarnette was last seen in California in March 2008, and that he resided in Georgia continuously during the period charged in the indictment, August 2, 2008, through December 27, 2008.[19]  A violation of the keeping-current requirement occurs when an offender fails to update his registration within "3 business days after each change of . . . residence," § 16916(c), and the evidence shows that DeJarnette's offense conduct (leaving California) occurred several months prior to the charged period and several months before August 1, 2008.  As such, it was not possible for the jury to convict on the alternative ground that DeJarnette violated subsection (c).

---

[19] According to the government, DeJarnette "absconded from the Northern District of California in March of 2008."

The government argues that the Northern District of California nevertheless remained an "involved jurisdiction" for the purposes of subsection (c) because it was DeJarnette's "last known address and the jurisdiction where he was required to initially register." To the extent that the argument relies on the applicability of the "initial registration" requirement, it fails for the reasons discussed in Part III. Quoting our decision in *United States v. Begay*, 622 F.3d 1187, 1187 (9th Cir. 2010), the government further argues that unless sex offenders are required to update their registrations upon leaving a jurisdiction, they will "slip through the cracks" of SORNA's requirements. *Begay* involved two defendants who "initially registered as a sex offenders with the State of Arizona pursuant to [SORNA] but did not update their registration information when they moved to a different Arizona address within the territory of the Navajo Nation." *Id.* at 1189. Both defendants were pre-Act offenders who changed residences prior to August 1, 2008. *See id.* at 1192–93.

The government's reliance on *Begay* is misplaced for two reasons. First, although both *Begay* defendants were arrested on tribal land, we determined that, "[a]t the time of their arrest, Defendants . . . 'resided' in both the Navajo Nation and the State of Arizona." *Id.* at 1194. We held that "Defendants had an obligation under SORNA [subsection (a)] to 'keep the registration current' in Arizona." *Id.* (quoting § 16913(a)). In other words, Arizona remained an "involved jurisdiction" because the defendants in *Begay* "resided" there both before *and* after the change of residence. Contrary to the government's portrayal, *Begay* did not hold that the jurisdiction from which an offender departs is always a "jurisdiction involved pursuant to subsection (a)." § 16913(c). Rather, Arizona was an "involved jurisdiction"

in *Begay* because the offenders continued to "reside" there for the purposes of subsection (a).

Second, *Begay* did not squarely address the retroactivity problem that we face today, and it was decided without the benefit of *Valverde* and *Reynolds*, decisions that subsequently clarified the retroactive applicability of SORNA. Thus, *Begay* assumed that "SORNA's registration requirements applied immediately and retroactively to all sex offenders regardless of when they were convicted." *Begay*, 622 F.3d at 1191. In light of *Valverde* and *Reynolds*, we are no longer free to assume that a pre-Act offender whose nonregistration offense conduct predates August 1, 2008 is punishable under SORNA. To the extent that *Begay* holds otherwise, it has been abrogated by *Reynolds*.

Finally, we are not persuaded by the government's argument that other circuits treat the jurisdiction from which an offender departs as a "jurisdiction involved" under SORNA. The out-of-circuit cases the government cites either assume that SORNA took retroactive effect immediately upon enactment – an assumption that can no longer stand in the face of *Reynolds*,[20] and that contravenes the law of this circuit as declared in *Valverde* – or are otherwise inapposite. *See United States v. Murphy*, 664 F.3d 798, 799–800 (10th

---

[20] *Reynolds* abrogated decisions of the Second, Eighth, and Tenth Circuits (and others), which held that SORNA's registration requirements apply to pre-Act offenders "from the date of the Act's enactment, and prior to any . . . specification [by the Attorney General], at least with respect to pre-Act offenders who had already registered under state law." *Reynolds*, 132 S. Ct. at 980 (citing *United States v. Fuller*, 627 F.3d 499, 506 (2d Cir. 2010), *United States v. Hinckley*, 550 F.3d 926, 932 (10th Cir. 2008), and *United States v. May*, 535 F.3d 912, 918–19 (8th Cir. 2008)).

Cir. 2011) (affirming the SORNA conviction of a pre-Act offender for nonregistration offense conduct occurring prior to August 1, 2008); *United States v. Van Buren*, 599 F.3d 170, 175 (2d Cir. 2010) (same)); *United States v. Voice*, 622 F.3d 870, 874–75 (8th Cir. 2010) (inapposite because defendant's nonregistration offense conduct occurred after August 1, 2008).

## V.

As the foregoing discussion indicates, not only were the instructions prejudicially erroneous, but the evidence was clearly insufficient to sustain a conviction under a correct reading of the law.  Because the evidence was insufficient, "'the Double Jeopardy Clause forbids a second trial.'" *Douglas v. Jacquez*, 626 F.3d 501, 505 (9th Cir. 2010) (quoting *Burks v. United States*, 437 U.S. 1, 11 (1978)).

## VI.

For the foregoing reasons, the judgment of conviction is **REVERSED** and the case **REMANDED** to the district court with instructions to enter a judgment of acquittal.[21]

---

[21] Because of our disposition, we need not and do not reach DeJarnette's venue challenge.

GRABER, Circuit Judge, dissenting:

I respectfully dissent.

The Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, 120 Stat. 587 (2006) (codified at 42 U.S.C. §§ 16901–16962), authorizes the Attorney General to specify the applicability of SORNA's registration requirements to pre-SORNA offenders. The Attorney General promulgated regulations stipulating that SORNA's registration requirements apply to *all* sex offenders, including pre-SORNA offenders, and providing guidelines for initial registration of retroactive classes of offenders. Those regulations were in effect during the period for which Defendant Alexander DeJarnette, Jr., was charged with failing to register. As a sex offender covered by SORNA, Defendant had to comply with all its registration requirements, including the requirement that he register initially in the jurisdiction of his conviction. I therefore would hold that the jury was properly instructed, and I would affirm the conviction.

Title 42 U.S.C. § 16913 sets out the registration requirements for sex offenders under SORNA in four subsections. Under subsection (a), each sex offender must register in every jurisdiction where the offender resides, works, or is a student. "For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted" if it differs from the offender's place of residence. Subsection (b) sets out timing requirements for the initial registration: the offender "shall initially register" before completing the term of imprisonment, or no later than three business days after sentencing, if not sentenced to a term of

imprisonment. Subsection (c) then lists requirements for "[k]eeping the registration current."

Certainly, a pre-SORNA offender—that is, someone who was convicted before the enactment of SORNA—cannot comply with the *timing* requirements of subsection (b). Therefore, subsection (d), titled "Initial registration of sex offenders unable to comply with subsection (b)," states:

> The Attorney General shall have the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter or its implementation in a particular jurisdiction, and to prescribe rules for the registration of any such sex offenders and for other categories of sex offenders who are unable to comply with subsection (b) of this section.

Subsection (d) delegates to the Attorney General two responsibilities. Its first clause gives the Attorney General the authority to specify the applicability of *all* the requirements of the subchapter to pre-SORNA offenders. This clause makes no distinction between the initial registration requirement and the requirement to keep the registration current, both of which are requirements outlined in subsection (a). Subsection (d)'s second clause gives the Attorney General the authority to prescribe rules of registration for offenders who cannot comply with the *timing* requirements described in subsection (b), whether because they were pre-enactment offenders or for any other reason.

The Supreme Court has noted the importance that Congress placed on uniformity among jurisdictions and on universal coverage of the new federal law. *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012).[1]  In particular, "[t]he Act's history . . . reveals that many of its supporters placed considerable importance upon the registration of pre-Act offenders." *Id.* at 982.  As the Supreme Court explained, Congress delegated procedures for registration of pre-SORNA offenders to the Attorney General in order to facilitate the transition to the new system and to smooth out the "practical problems arising when the Act sought to apply the new registration requirements to pre-Act offenders." *Id.* at 981.

SORNA's registration requirements do not apply to pre-SORNA offenders "until the Attorney General so specifies." *Id.* at 984.  But once the Attorney General sets the registration requirements for pre-SORNA offenders, those offenders have the same registration requirements as all other offenders, except to the extent that the Attorney General "prescribe[s] rules for the registration" of sex offenders who are unable to comply with the initial registration timing requirements of subsection (b).  42 U.S.C. § 16913(d).  We have held that the Attorney General completed the steps necessary to make SORNA retroactive effective as of August 1, 2008.  *United States v. Elk Shoulder*, No. 10-30072, 2013 WL 5303242, at *2 (9th Cir. Sept. 23, 2013); *United States v. Valverde*, 628 F.3d 1159, 1162 (9th Cir. 2010).

---

[1] We also recently recognized that "SORNA is designed to improve the uniformity and effectiveness of sex-offender registration systems." *United States v. Elk Shoulder*, No. 10-30072, 2013 WL 5303242, at *2 (9th Cir. Sept. 23, 2013).

The Attorney General specified SORNA's applicability to pre-SORNA offenders in 73 Fed. Reg. 38,030–1, 38,062–63 (July 2, 2008), which expressly states that pre-SORNA offenders must comply with the initial registration requirement. Under the heading "IX. *Initial Registration*," the subsection "Retroactive Classes" begins:  "*SORNA applies to all sex offenders*, including those convicted of their registration offenses prior to the enactment of SORNA." *Id.* at 38,063 (emphases added).  The "Initial Registration" portion of the regulations then details various procedures and timelines for the initial registration of pre-SORNA offenders. The Attorney General thus clearly and validly specified the applicability of the registration requirements, including the initial registration requirement, to pre-SORNA offenders.  As we recently recognized, "SORNA's registration requirement, codified at 42 U.S.C.§ 16913, requires all state and federal sex offenders to register." *Elk Shoulder*, 2013 WL 5303242, at *2 (footnote and internal quotation marks omitted).

The majority writes:  "We have searched in vain for any indication that the Attorney General has applied the 'initial registration' requirement of registration in the jurisdiction of conviction, [42 U.S.C.] § 16913(a), to pre-Act offenders who were already required to register under some pre-SORNA scheme.  But we are not surprised by the Attorney General's silence." Maj. op. at 18.  But the Attorney General was *not* silent.  Under the headings for "IX. Initial Registration" of "Retroactive Classes," the Attorney General specified that "SORNA applies to *all* sex offenders."   73 Fed. Reg. at 38,063 (emphasis added).  There is no ambiguity.  The plain text of the regulations extends SORNA's initial registration requirement to *all* sex offenders, of which pre-SORNA offenders with registration requirements under a previous law are simply one subset.

In addition to starting with that affirmative statement of universal application, the regulation covers in detail Defendant's situation. The majority relies heavily on numbered examples, to which I will return shortly. But in the paragraph immediately following those examples, the regulations provide:

> With respect to sex offenders with pre-SORNA or pre-SORNA-implementation convictions who remain in the prisoner, supervision, or registered sex offender populations at the time of implementation[,] . . . jurisdictions should endeavor to register them in conformity with SORNA as quickly as possible . . . . [T]his may entail newly registering *or re-registering* a large number of sex offenders . . . .

73 Fed. Reg. at 38,063 (emphasis added). The regulations then go on to outline a number of alternate timing options for jurisdictions in which it is not feasible to register all prior offenders immediately. These procedures are in place precisely to ensure that there will be an *initial SORNA registration of all offenders*, even though the initial registration *timing* for some pre-SORNA offenders may differ. This paragraph covers Defendant: He is a sex offender who remains under the supervision of the Northern District of California, which the regulations instruct to "endeavor to register [him] in conformity with SORNA as quickly as possible." *Id.* The Northern District sought to do

exactly that when it asked that he register under SORNA as a condition of his supervised release.[2]

By focusing only on the numbered examples, the majority misses the forest for the trees. Those three examples are offered only as "illustrat[ions]," *id.*, not as an exhaustive or comprehensive list. The majority loses sight of the broader purpose and structure of the section in which the examples are situated. The fact that none of them is identical to Defendant's situation is neither dispositive nor even particularly informative. The examples all deal with offenders who *complied* with their previous post-conviction

---

[2] The majority misses two key points about this paragraph. First, as quoted in text, the initial registration regulations note that sex offenders will be registered *or re-registered*. Because this discussion appears in the regulations concerning *initial registration only*, the obvious message to be derived is that the Attorney General has specified that some pre-SORNA sex offenders would be re-registering when they completed their initial *SORNA* registration. They would do so if, for example, they had registered with a state system.

Second, the majority suggests that, because the Attorney General's initial registration regulations are directed to jurisdictions, they are insufficient to put pre-SORNA sex offenders on notice. Maj. op. at 12 n.4. But the Attorney General's specification that the initial registration requirement applies means that, once a jurisdiction endeavors to register a pre-SORNA sex offender, the offender has an obligation to comply with the jurisdiction's initial registration requirements. In this case, the Northern District of California, the jurisdiction of conviction, where Defendant was still under supervision, specifically asked that Defendant register under SORNA.

registration requirements. Defendant did not, so it is unsurprising that his situation is not listed.**[3]**

In particular, the majority focuses on Example 2, which describes an offender who, like Defendant, had a pre-SORNA conviction and release and was required to register under an earlier law. Example 2 explains that such an offender must be notified of his new in-person verification requirements following implementation of SORNA. Maj. op. at 14–16. The majority finds it "telling" that the in-person verification requirement is the only new requirement mentioned and that the example does not mention re-registration. *Id.* at 15. But the Attorney General likely chose that wording because the offender in Example 2 was already part of an earlier *registered* sex offender population. His initial SORNA registration—which still must occur—would therefore take place when the jurisdiction took steps to implement SORNA, including by bringing all already-*registered* sex offenders into the SORNA system.

---

[3] The majority "finds further support in the Department of Justice's most recent codification of rules regarding SORNA's retroactive applicability." Maj. op. at 16 (citing 28 C.F.R. § 72.3 (2011)). Those rules did not govern Defendant's responsibilities during the relevant period. Moreover, I disagree with the majority's reading of the new rules. Again, the majority relies on examples that are intended to be illustrative, not limiting or exhaustive. The text immediately preceding the examples states simply: "The requirements of the Sex Offender Registration and Notification Act apply to all sex offenders, including sex offenders convicted of the offense for which registration is required prior to the enactment of that Act." 28 C.F.R. § 72.3. There is no limiting text to suggest that some offenders have fewer registration requirements. The Attorney General again has specified that all offenders, including pre-SORNA offenders, are required to comply fully with its provisions.

The majority argues that reading an offender's initial SORNA registration requirement as "initial" after the offender has already been required to register under a previous law requires "contorting the English language." Maj. op. at 19–20.  But the "initial registration requirement" at issue is simply the initial registration requirement *under SORNA*.  Every offender, whether convicted pre- or post-SORNA, has an initial registration requirement—it is simply the first time that he or she registers in the uniform federal system following enactment of the new law.    This understanding comports with the Attorney General's recognition that complying with the *initial* SORNA registration requirement will involve "registering *or re-registering*" many people already in the sex offender population.  73 Fed. Reg. at 38,063 (emphasis added).

Furthermore, the next section of the regulations is entitled, "X.  Keeping *the* Registration Current."  73 Fed. Reg. at 38,065 (emphasis added).  "[T]he registration" here refers to the SORNA registration, which the majority does not dispute applies to all sex offenders.  In order to have a SORNA registration to keep current, every offender must first have *a* SORNA registration, and the "initial registration requirement" refers to that first SORNA registration.

My reading is consistent not only with the regulations, but also with the plain text of the statute and with its purpose. Congress intended to create a uniform system that registers all sex offenders, including those who may have fallen through the cracks under previous registration programs. *Reynolds*, 132 S. Ct. at 979, 982; *Elk Shoulder*, 2013 WL 5303242, at *2.  The majority's reading would create two categories of pre-SORNA offenders.  Those with no prior registration requirement would be brought into SORNA

under the initial-registration mandate. Those with prior registration requirements would have to update their registration if they ever changed their residence or place of employment or study. But if they were already registered under an old system, or should have registered but failed to, they would not have to register under SORNA in the jurisdiction where convicted (if that location differs from the place of residence, employment, or study) and easily could fall through the cracks. This is precisely the sort of loophole that SORNA was designed to address, and the Attorney General's regulations provide straightforward guidelines for moving toward a universal registration system, beginning with the initial SORNA registration of *all* offenders.

In sum, the Attorney General's regulations validly specify that SORNA's registration requirements apply to all sex offenders, including pre-SORNA offenders. Defendant, who was convicted in the Northern District of California, was notified of his initial SORNA registration requirement in that jurisdiction. He nevertheless refused to register. He was required to complete an initial registration in the jurisdiction of conviction, and the jury was properly instructed. I would affirm.