MEMORANDUM *
Law enforcement officials obtained a warrant to search Mark Gill’s home for evidence of witness tampering and conspiracy to commit witness tampering in connection with the prosecution of Dave Cor-bit, a leader of the Krude Rude Brood (“Brood”) gang. The search revealed methamphetamine, which Gill confessed to dealing. Gill appeals his convictions for conspiracy to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 846, and possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(C). We affirm the possession conviction, but reverse the conspiracy conviction.
1. Gill argues that the district court erred in denying his request for a Franks hearing. See Franks v. Delaware, 438 U.S. 154, 155-56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). But, as the district court recognized, it “in essence” granted his Franks request by allowing him to present under an offer of proof rubric all evidence he wished to present about the accuracy of the search warrant affidavit. In any case, Gill did not establish that any alleged misstatements in the affidavit were material to the existence of probable cause that he *422 was involved in a witness tampering scheme.
2. The affidavit' alleged that (1) Corbit appeared to be looking for extralegal ways to avoid prosecution; (2) Corbit’s gang associates, including the widely-feared Bobby Hammond, were looking for a witness because of her anticipated testimony against Corbit; (3) Hammond sought to cover his tracks; (4) the man Hammond hired, Deuce Romero, was going to stop looking for the witness out of respect for a former boyfriend of the witness’s Mend; and (5) Gill, a Brood associate, was part of the scheme. The district court did not err in finding that the affidavit established probable cause and denying the motion to suppress.
3. Gill argues that the district court erred by refusing to compel the government to grant use immunity to Deuce during the Franks hearing and to Gill’s alleged co-conspirator, Reanna Erickson, at trial. There is no evidence, however, that the prosecutor caused Deuce to invoke the Fifth Amendment. See United States v. Straub, 538 F.3d 1147, 1162 (9th Cir.2008). The prosecutor may have indirectly caused Erickson to invoke her Fifth Amendment rights by ensuring that she was provided with counsel. But, this was a responsible thing to do, and there is no evidence that the prosecutor threatened Erickson or otherwise acted “with the purpose of distorting the fact-finding process.” Id.
4. The district court admitted text messages from Erickson to a person identified in her phone as “Gill Mark” as statements by a party and a co-conspirator. Gill argues that the label “Gill Mark” was inadmissible hearsay. But, a label bearing a name is not an assertion, and therefore not hearsay. United States v. Snow, 517 F.2d 441, 442-44 (9th Cir.1975). Moreover, Gill admitted that the phone number associated with the text messages was his.
5. Gill also argues that the district court erred in admitting texts between Erickson and DJ Probasco. Gill waived this argument by failing to ' adequately raise it in his opening brief. See Martinez-Serrano v. INS, 94 F.3d 1256, 1259 (9th Cir.1996). In any event, any error was harmless: the conversation established only that Erickson had sought to buy methamphetamine from Probasco, an unimportant fact given that Gill admitted that Probasco was one of his sources.
6. Gill argues that the district court committed plain error by failing to give a specific unanimity instruction. Such an instruction might have been useful, because the government’s summary chart could have led the jury to believe there were multiple conspiracies. See United States v. Lapier, 796 F.3d 1090, 1096 (9th Cir.2015). But, any error was not plain: the vast majority of the conspiracy evidence was about Gill and Erickson, and in closing argument, the prosecutor repeatedly referred only to Erickson as Gill’s co-conspirator.
7. The evidence does not support Gill’s conviction for conspiracy to distribute methamphetamine. Viewed in the light most favorable to the government, the evidence shows only that Gill and Erickson, who sold separately, bought dealer-sized quantities of methamphetamine together once and discussed doing so another time; and that Erickson lived in Gill’s house for a few days. There was no evidence of an agreement to distribute jointly or in parallel. In contrast to the cases cited by the government, there was no evidence of “a prolonged and actively pursued course” of joint purchases or “a shared stake in the [other] buyer’s illegal venture.” United States v. Moe, 781 F.3d 1120, 1125 (9th Cir.2015) (quotation marks omitted); see also United States v. Foy, *423 641 F.3d 455, 466 (10th Cir.2011) (the conspirators “regularly pooled their money together to purchase multiple-kilogram quantities of cocaine, treated their debts to their drug supplier as common debts, coordinated the distribution of large amounts of cocaine, and discussed taking a large amount of cocaine from their supplier without paying for it”); United States v. Thornton, 609 F.3d 373, 380 (6th Cir.2010) (the joint pm-chases occurred “every day for at least two months”); United States v. Harris, 567 F.3d 846, 851 (7th Cir.2009) (the joint purchases “happened at least biweekly, if not more, for several years”).
8. Because we reverse Gill’s conspiracy conviction, we vacate the sentence and remand for resentencing on an open record so that the district court may resentence Gill without relying on the conspiracy count.[1]
AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.

 This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

. Because we reverse the conspiracy count conviction for insufficiency of the evidence, Gill may not be retried on that count. United States v. DeJamette, 741 F.3d 971, 985 (9th Cir.2013) ("Because the evidence was insufficient, the Double Jeopardy Clause forbids a second trial." (citation and internal quotation marks omitted)).